ERNEST BERNHAUSER, Indiv. and on Behalf of All Others Similarly Situated, Plaintiff-Appellant, v. GLEN ELLYN DODGE, INC., et al., Defendants-Appellees.—MONOHAR L. JASUJA, Indiv. and on Behalf of All Others Similarly Situated, Plaintiff-Appellant, v. ROHR-MONT MOTORS, INC., f/k/a Toyota of Westmont, Defendant-Appellee.—KIMBERLEIGH A. WEBER, Indiv. and on Behalf of All Others Similarly Situated, Plaintiff-Appellant, v. ROHR-VILLE MOTORS, INC., d/b/a Saturn of Waukegan, Defendant-Appellee.

Second District    Nos. 2—96—1171, 2—96—1174, 2—96—1188 cons.

Opinion filed June 11, 1997.

Vincent L. DiTommaso and Glen E. Berman, both of DiTommaso & Berman, P.C., of Oakbrook Terrace, and Tarranpaul S. Chawla, of Chawla & Associates, of Hinsdale, and Robert E. O'Neill, of O'Neill & Bockelman, for appellants.

Jerald M. Mangan and Steven R. Johnson, both of Best, Mangan & Langhenry, of Wheaton, for appellees Glen Ellyn Dodge, Inc., Rohr-Mont Motors, Inc., and Rohr-Ville Motors, Inc.

Kendall R. Meyer and Todd A. Rowden, both of Wilson & McIlvaine, of Chicago, and Charles A. Newman, Roman P. Wuller, and Christopher M. Hohn, all of Thompson Coburn, of St. Louis, Missouri, and Allan M. Huss, of Auburn Hills, Michigan, for appellee Chrysler Corporation.

JUSTICE INGLIS delivered the opinion of the court:

In the above-entitled cases, consolidated for decision in this court, class plaintiffs, Ernest Bernhauser (Bernhauser), Monohar L. Jasuja (Jasuja), and Kimberleigh A. Weber (Weber) (collectively, plaintiffs), ask us to decide whether their allegations state a claim under the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 et seq. (West 1994)) against defendants, Glen Ellyn Dodge, Inc. (Glen Ellyn), Rohr-Mont Motors, Inc. (Rohr-Mont), and Rohr-Ville Motors, Inc. (Rohr-Ville) (collectively, dealerships). Additionally, we are also called upon to decide whether Bernhauser has stated a claim for civil conspiracy against defendant Chrysler Corporation (Chrysler).

In case No. 2—96—1171, Bernhauser v. Glen Ellyn Dodge, Inc., Bernhauser alleged that he purchased a car from Glen Ellyn pursuant to a retail installment contract (RIC). In addition to the car, Bernhauser also purchased an extended-service contract. In the itemization of the various amounts owing on the RIC, Bernhauser alleged that Glen Ellyn placed the amount for the extended-service contract under the heading "Amounts Paid to Others for You," which inaccurately represented that this was a pass-through charge. Bernhauser alleged that instead of passing on the charge Glen Ellyn's

standard practice was to pay a small amount as an administrative fee to a third party and keep the rest as profit.

On December 29, 1995, Bernhauser filed a class action complaint alleging that Glen Ellyn had violated the Consumer Fraud Act through the use of deceptive or misleading statements in the RIC. Plaintiff also eventually filed an amended count II of his complaint, alleging that defendant Chrysler engaged in a conspiracy with its dealerships to retain a substantial portion of the money collected for the extended-service contracts, which were listed under "Amounts Paid to Others for You" on the Chrysler RICs. Glen Ellyn moved to dismiss Bernhauser's complaint, pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1994)), on the ground that compliance with the Truth in Lending Act (15 U.S.C. § 1601 et seq. (1994)) was a complete bar to liability. Chrysler also filed a motion to dismiss Bernhauser's complaint pursuant to section 2—615 on the ground that Glen Ellyn's compliance with the Truth in Lending Act barred its own vicarious liability. The trial court granted the motions to dismiss, finding that the Truth in Lending Act permitted the nondisclosure of where the extended-service contract money was going. On September 11, 1996, the trial court dismissed Bernhauser's complaint with prejudice, and his timely appeal followed.

In case No. 2—96—1174, Jasuja v. Rohr-Mont Motors, Inc., Jasuja made substantially the same allegations as Bernhauser. He alleged that Rohr-Mont listed the price of the extended-service contract under a section of the RIC entitled "Amounts Paid to Others for You," which gave rise to the inference that this was a pass-through charge. He further alleged that Rohr-Mont kept most of the money, passing a small amount along to a third party as an administrative fee.

Jasuja filed his third amended class action complaint on April 26, 1996, alleging that Rohr-Mont's practice of placing the charges for an extended-service contract under the heading "Amounts Paid to Others for You" violated the Consumer Fraud Act. Rohr-Mont moved to dismiss Jasuja's complaint pursuant to section 2—619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2—619(a)(9) (West 1994)) on the grounds that the Truth in Lending Act and its accompanying regulations permitted it to place the charges for extended-service contracts under the "Amounts Paid to Others for You" heading and Rohr-Mont's compliance was a bar to liability. Rohr-Mont also alleged that Jasuja's failure to attach a copy of the extended-service contract was an alternate ground to dismiss the complaint because it was a necessary document. See 735 ILCS 5/2—606 (West 1994). The trial court granted Rohr-Mont's motion to dismiss, finding that compliance with

the Truth in Lending Act acted as a bar against liability under the Consumer Fraud Act. On September 11, 1996, the trial court dismissed Jasuja's complaint with prejudice, and his timely appeal followed.

In case No. 2—96—1188, Weber v. Rohr-Ville Motors, Inc., Weber alleged that Rohr-Ville also placed the charges for an extended-service contract under the heading, "Amounts Paid to Others for You," yet kept most of the money and passed along a small portion to a third party. She alleged that this practice violated the Consumer Fraud Act.

Weber filed her class action complaint on May 26, 1995, alleging that Rohr-Ville violated the Consumer Fraud Act in count I, was unjustly enriched in count II, and alleged that Bank One Milwaukee violated the Consumer Fraud Act in count III. Weber voluntarily dismissed counts II and III early in 1996. Rohr-Ville moved to dismiss Weber's complaint pursuant to section 2—615 of the Code of Civil Procedure on the grounds that Weber's allegations of misrepresentation were contradicted by exhibits attached to the complaint, her allegations were not made with sufficient specificity, and she did not sufficiently plead damages under the Consumer Fraud Act.

The trial court granted Rohr-Ville's motion on May 9, 1996, finding that Rohr-Ville's compliance with the Truth in Lending Act was a defense to a consumer fraud claim. Weber filed a motion to reconsider, which was denied on June 6, 1996. On June 24, 1996, Weber filed an "Emergency Motion to Present Additional Authority," the functional equivalent to a motion to reconsider the ruling on the first motion to reconsider. On July 11, 1996, the trial court entered an order purporting to stay the time for filing a notice of appeal for 45 days. On September 6, 1996, the trial court denied Weber's "Emergency Motion to Present Additional Authority." Weber filed a notice of appeal on October 2, 1996.

■ Before we reach the merits of the appeals, we must first consider whether we have jurisdiction over Weber's appeal. A notice of appeal must be filed within 30 days of the entry of the final judgment appealed from. 155 Ill. 2d R. 303(a)(1). "No request for reconsideration of a ruling on a post-judgment motion will toll the running of the time within which a notice of appeal must be filed under [Rule 303]." 155 Ill. 2d R. 303(a)(2).

■ The trial court's ruling became final and appealable on June 6, 1996, when it denied Weber's motion to reconsider its May 9, 1996, order granting Rohr-Ville's motion to dismiss. Weber's notice of appeal was due on July 6, 1996. Weber's filing of her second motion to reconsider (the "Emergency Motion to Present Additional Author-

ity") did not toll the running of the time period. Accordingly, her notice of appeal was almost three months late and is ineffective.

Weber argues that her second post-judgment motion was filed within the 30-day period during which a trial court retains jurisdiction over a matter after disposing of it. She contends that this is sufficient to allow the trial court to rule on her motion and that the trial court's "stay" of the notice of appeal was an implicit vacation of its June 6 ruling on Weber's first post-judgment motion, citing to *Workman v. St. Therese Medical Center*, 266 Ill. App. 3d 286 (1994), for support.

*Workman* is factually distinguishable. There, the plaintiff filed a motion and an order was entered (1) vacating the trial court's order that struck the plaintiff's first post-judgment motion, and (2) reinstating the first post-judgment motion. *Workman*, 266 Ill. App. 3d at 289. Here, Weber did not file a motion to vacate the trial court's June 6 order, and, equally importantly, the trial court did not vacate the June 6 order. It simply purported to stay the time for filing the notice of appeal. *Workman* does not support Weber's position, and we continue to regard Weber's second post-judgment motion as a second motion to reconsider.

Weber next argues that her second post-judgment motion raised new issues that could not have been raised in the first motion and, thus, falls within an exception to the rule that subsequent post-judgment motions will not extend the time to file a notice of appeal. *Aetna Life Insurance Co. v. H.W. Stout & Associates, Inc.*, 112 Ill. App. 3d 570, 575 (1983). Weber misconstrues the effect of her motion. Her motion did not raise a new issue; rather, it merely raised a new case concerning the same issues already litigated. We reject this argument.

Weber finally argues that the dealership waived its objection by acquiescing to the trial court's order—in effect arguing that the parties have conferred jurisdiction by waiver or agreement. This they cannot do. "Compliance with the deadlines for appeals in Supreme Court Rule 303 [(155 Ill. 2d R. 303)] is mandatory and jurisdictional [citations], and appellate jurisdiction may not be conferred by *laches*, consent, waiver or estoppel." *Martin v. Cajda*, 238 Ill. App. 3d 721, 728 (1992). We do not have jurisdiction over appeal No. 2—96—1188 and accordingly dismiss it.

■ We turn now to the merits of the remaining plaintiffs' appeals. When reviewing a motion to dismiss, a court must take as true all well-pleaded facts and determine whether the complaint sufficiently sets forth a claim upon which relief may be granted. *Grimaldi v. Webb*, 282 Ill. App. 3d 174, 179 (1996). A complaint will

not be dismissed " 'unless it clearly appears that no set of facts can be proved which will entitle plaintiffs to recover.' " *Grimaldi*, 282 Ill. App. 3d at 179, quoting *People ex rel. Daley v. Datacom Systems Corp.*, 146 Ill. 2d 1, 11 (1991).

■ Section 2 of the Consumer Fraud Act provides, in pertinent part:

> "Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with the intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act' [(815 ILCS 510/2 (West 1994))], *** in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2 (West 1994).

In order to state a cause of action under the Consumer Fraud Act, the plaintiff must allege: (1) a deceptive act or practice; (2) the defendant intended for the plaintiff to rely on the deception; and (3) that the deception occurred in the course of conduct involving trade or commerce. *Siegel v. Levy Organization Development Co.*, 153 Ill. 2d 534, 542 (1992). Significantly, under the Consumer Fraud Act, the plaintiff is not required to allege that he or she actually relied upon the deception. *Siegel*, 153 Ill. 2d at 542.

■ Plaintiffs allege that the deceptive act was the dealerships' practice of placing the charge for the extended-service contract under the section heading "Amounts Paid to Others for You"; this section also included payments to public officials for license, title, and taxes. Plaintiffs allege that the placement of the charge for the extended-service contract implies that it is a pass-through charge, as are the license, title, and tax charges.

The dealerships argue that plaintiffs failed to allege to whom the charges for the extended-service contracts were going to be made. Rather, according to the dealerships, plaintiffs merely allege that the charges are going to "E.S.C." or to "CHRY SERV CTRT." The dealerships claim that there is no factual basis for the conclusion that the charges are going to a third party. We reject the dealerships' argument.

Plaintiffs' reasoning is simple, direct, and logical. The charges were placed under the heading "Amounts Paid to Others for You." There were blanks provided for the names or purposes of the charge. Other charges in this section included those for the license, taxes,

and title. Viewing these facts in the light most favorable to plaintiffs, there is an ample basis to conclude that the charges for the extended-service contract were likewise going to a third party. We note that the dealerships did not list the persons or entities receiving the charges, like the "State of Illinois" or "Secretary of State," but rather listed the items or reasons for incurring the charges in this section. Also, the dealerships did not list themselves as recipients of these charges. Thus, it is eminently reasonable to conclude that a charge under the heading "Amounts Paid to Others for You" would in fact be paid to a third party.

The dealerships also argue, in passing, that there was no deceptive act because the RIC accurately set forth the amount plaintiffs agreed to pay for the extended-service contracts. This circuitous argument apparently is based upon a disingenuous reading of plaintiffs' complaints. The deceptions that plaintiffs allege stem from the allegation that the dealerships did not, as they represented, pay the entire charge for the extended-service contracts to third parties but, instead, retained substantial portions of the charges. The dealerships' argument is irrelevant to plaintiffs' allegations, and, accordingly, we ignore it.

Plaintiffs next allege that the dealerships intended for them to rely upon the representation that the extended-service contract charges were all being passed to a third party. They further allege that the dealerships sold and leased new and used cars and that the alleged deception occurred during the normal course of the dealerships' business. Finally, the plaintiffs allege that the dealerships retained a substantial part of the extended-service contract charge. The dealerships do not dispute these allegations. Thus, we find that plaintiffs have stated a *prima facie* claim under the Consumer Fraud Act. See *Siegel*, 153 Ill. 2d at 542.

The dealerships, however, raise a number of contentions that could defeat plaintiffs' claims. We next consider the dealerships' affirmative defenses under the Consumer Fraud Act.

The dealerships assert that compliance with the Truth in Lending Act and Regulation Z (see generally 12 C.F.R. § 226 (1979)) provides a complete defense to liability for claims under the Consumer Fraud Act. 815 ILCS 505/10b(1) (West Supp. 1995); *Lanier v. Associates Finance, Inc.*, 114 Ill. 2d 1, 17-18 (1986). We do not read *Lanier* as expansively as do the dealerships. Instead, we choose to take *Lanier* at its word, for the supreme court limited its holding to the case, stating that "the defendant's compliance with the disclosure requirements of the Truth in Lending Act is a defense to liability under the Illinois Consumer Fraud Act *in the present case.*"

(Emphasis added.) *Lanier*, 114 Ill. 2d at 18. Thus, our inquiry is whether the dealerships complied with the disclosure requirements of the Truth in Lending Act and, if so, whether, under the particular facts of this case, compliance is a defense to liability under the Consumer Fraud Act.

We do not believe that the dealerships complied with the disclosure requirements of the Truth in Lending Act and Regulation Z. The purpose of the Truth in Lending Act is to promote "a meaningful disclosure of credit terms" in order to allow a consumer to "compare more readily the various credit terms available to him and avoid the uninformed use of credit." 15 U.S.C. § 1601(a) (1994). Congress delegated rulemaking authority under the Truth in Lending Act to the Federal Reserve Board. 15 U.S.C. § 1604(a) (1994). The Federal Reserve Board's administrative interpretations of the Truth in Lending Act and Regulation Z are dispositive "[u]nless demonstrably irrational." *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565, 63 L. Ed. 2d 22, 31, 100 S. Ct. 790, 797 (1980).

Before Regulation Z was amended, allegations of dealership conduct similar to that in this case stated a claim for a Truth in Lending Act violation. See, *e.g.*, *Swanagan v. Al Piemonte Ford Sales, Inc.*, No. 94—C—4070 (N.D. Ill. August 15, 1995); *Cirone-Shadow v. Union Nissan, Inc.*, No. 94—C—6723 (N.D. Ill. February 2, 1995). On December 7, 1995, the Federal Reserve Board issued a proposed change to its comments to Regulation Z, which provided:

> "[*Creditor-imposed charges added to amounts paid to others.*] A creditor that offers an item for sale in both cash and credit transactions sometimes adds an amount (often referred to as an 'upcharge') to a fee charged to a consumer by a third party for a service (such as for a maintenance or service contract) that is payable in an equal amount in both types of transactions, and retains that amount. At its option, the creditor may list the total charge (including the portion retained by it) as an amount paid to others, or it may choose to reflect the amounts in the manner in which they were actually paid to or retained by the appropriate parties."

*Alexander v. Continental Motor Werks*, 933 F. Supp. 715, 717 (N.D. Ill. 1996), citing 60 Fed. Reg. 62785 (December 7, 1995).

Responding to comments, the Federal Reserve Board issued the final form of the commentary, effective April 1, 1996, which provided:

> "*Charges Added to Amounts Paid to Others.* A sum is sometimes added to the amount of a fee charged to a consumer for a service provided by a third party (such as for an extended warranty or a service contract) that is payable in the same amount in comparable cash and credit transactions. In the credit transaction, the amount is retained by the creditor. Given the flexibility permitted

in meeting the requirements of the amount financed itemization *** [see commentary to Section 226.18(c)], the creditor in such cases may reflect that the creditor has retained a portion of the amount paid to others. For example, the creditor could add to the category 'amount paid to others' language such as '(we may be retaining a portion of this amount).' " (Emphasis in original.) 933 F. Supp. at 717; citing 61 Fed. Reg. 14954 (1996), New Comment 226.18(c)(1)(iii)—2.

Additionally, the Federal Reserve Board explained the purpose for the changes made between the proposed and final versions of the rule:

"As proposed, the comment stated that a creditor could include in the 'amount paid to others,' any amount retained by the creditor without itemizing or noting this fact. Concern is raised about the appropriateness of such treatment under the [Truth in Lending Act] where a substantial portion of a fee categorized as 'amounts paid to others,' is in fact retained by the creditor. Accordingly, a sentence has been added to clarify that given the flexibility in itemizing the amount financed, creditors may reflect that they have retained a portion of the 'amount paid to others' rather than disclosing the specific amount retained." 61 Fed. Reg. 14954 (1996), Comment 226.18(c)(1)(iii)—2.

A split in authority arose in the trial courts regarding the interpretation of the final commentary. See *Cirone-Shadow v. Union Nissan*, 955 F. Supp. 938, 942 (1997) (collecting cases on both sides of the split). One line of cases focused on the permissive language of the commentary in concluding that "[t]he [Federal Reserve Board] did not require creditors to alter their method of disclosure: the words 'must' or 'shall' do not appear." *Taylor v. Quality Hyundai, Inc.*, 932 F. Supp. 218, 220 (N.D. Ill. 1996). The second line of cases looked at the effect of the changes between the proposed and final versions of the comment, as well as supplemental explanatory material issued by the Federal Reserve Board, in concluding that "the finalized commentary reveals an intent not to relieve the dealer of the obligation to disclose the existence of an upcharge, but rather to relieve the dealer only of the obligation to disclose the amount of the upcharge." (Emphasis omitted.) *Alexander v. Continental Motor Werks, Inc.*, 933 F. Supp. 715, 718 (N.D. Ill. 1996).

The United States Court of Appeals for the Seventh Circuit recently resolved the split, holding that the commentary does not authorize a dealer to make an inaccurate disclosure, but instead authorizes "the dealer to disclose only the fact that he is retaining a portion of the charge, rather than the exact amount of the retention." *Gibson v. Bob Watson Chevrolet-Geo, Inc.*,

112 F.3d 283, 286 (7th Cir. 1997). We find *Gibson* and *Alexander* to be persuasive. This interpretation of the commentary benefits both consumers (notifying them of an upcharge) and dealers (preventing disclosure of the actual amount of the charge) as well as adhering to the "fundamental proposition that any [Truth in Lending Act] disclosure must be accurate." (Emphasis omitted.) *Alexander*, 933 F. Supp. at 718. To adopt the dealerships' reasoning would be to authorize a violation of the Truth in Lending Act. This reasoning is, at best, illogical, if not "demonstrably irrational." Accordingly, we adopt the reasoning of *Gibson* and *Alexander* and find that the dealerships did not comply with the disclosure requirements of the Truth in Lending Act by inaccurately stating the charge for an extended-service contract was paid to a third party.

The dealerships contend that their RICs have found a safe harbor for complying with "Form H-3" under Regulation Z. See 12 C.F.R. § 226, App. H-3 (1996). The dealerships' argument is misplaced.

Initially, we note that the dealerships seem to have lost sight of the fact that this is an action under the Consumer Fraud Act. The Truth in Lending Act enters this action only so far as compliance with the Truth in Lending Act is a defense to a claim under the Consumer Fraud Act. Next, the claim plaintiffs are making goes to the substance, not form, of the contract. Thus, using a model form is not a bar to plaintiffs' claim. *Cirone-Shadow*, 955 F. Supp. at 944. Finally, because the form requires a numerical disclosure, the dealerships would be required to list the actual amount passing to the extended-service contract administrator, and the safe harbor is unavailable to disclosures required to be given numerically. *Gibson*, 112 F.3d at 285.

The dealerships next ask us to consider whether the new commentary to Regulation Z can be applied to the instant actions. They argue that, if the new commentary is merely a clarification of existing law, then it may be retroactively applied. If, however, it is a substantive change, then it may not be retroactively applied. Under either view, however, the dealerships did not comply with the Truth in Lending Act, and, thus, plaintiffs stated a cause of action.

As noted above, before the changes to the commentary, a dealership, which inaccurately represented that the charge for an extended-service contract was paid to a third party when it actually retained a substantial portion of the charge, violated the Truth in Lending Act. See, *e.g., Swanagan v. Al Piemonte Ford Sales, Inc.*, No. 94—C—4070 (N.D. Ill. August 15, 1995); *Cirone-Shadow v. Union Nissan, Inc.*, No. 94—C—6723 (N.D. Ill. February 2, 1995). Thus, even if the new commentary works a substantive change in the law, the dealerships

would nevertheless have violated the Truth in Lending Act under the old commentary. However, our interpretation of the new commentary is consistent with the idea that it merely clarifies existing law. Indeed, were we to agree with the dealerships' interpretation, then the new commentary would substantively change the existing law because it would allow a dealer to make a knowing misrepresentation about an amount paid to others and yet comply with the Truth in Lending Act. Our interpretation, however, gives dealers the flexibility to alert the consumer to an upcharge without being required to disclose the amount of the upcharge, thus making an accurate disclosure as the Truth in Lending Act has always required. Therefore, the new commentary is applicable to these appeals. See *Pope v. Shalala*, 998 F.2d 473, 482-86 (7th Cir. 1993).

In light of our determination that the dealerships did not comply with the disclosure requirements of the Truth in Lending Act and Regulation Z, we need not address the applicability of *Lanier* to the circumstances of this case. Because the dealerships allegedly violated the Truth in Lending Act, they are unable to raise any affirmative matter sufficient to defeat plaintiffs' complaints. Accordingly, we find that the trial courts erred by dismissing plaintiffs' complaints. We next consider the remaining argument of the dealerships.

■ The dealerships contend that plaintiffs' complaints should be dismissed pursuant to section 2—606 of the Code of Civil Procedure (735 ILCS 5/2—606 (West 1994) ("If a claim or defense is founded upon a written instrument, a copy thereof *** must be attached to the pleading as an exhibit or recited therein")) for failing to attach the extended-service contract applications to their amended complaints. The dealerships assert that these applications were documents upon which plaintiffs' complaints were based, and, therefore, plaintiffs failed to include necessary documents with their pleadings. The dealerships urge that we dismiss plaintiffs' complaints with prejudice. *Christoffel v. Country Mutual Insurance Co.*, 183 Ill. App. 3d 32, 35 (1989).

The dealerships' argument is without merit. Plaintiffs' complaints involve the substance of the RICs, not the extended-service contracts. While plaintiffs mention the extended-service contracts in their complaints, this mere mention does not transform the extended-service contract into a document upon which the action is founded. Plaintiffs properly attached copies of the RICs to their complaints. Accordingly, we hold that plaintiffs complied with the requirements of section 2—606.

■ We next consider Bernhauser's allegations against Chrysler. In count II of his complaint, Bernhauser alleges that Chrysler

engaged in a civil conspiracy with Glen Ellyn to obtain money improperly from its customers. Chrysler first recapitulates the arguments of the dealerships, contending that Glen Ellyn complied with the Truth in Lending Act and that the new commentary should not retroactively apply to its detriment. In light of our resolution of these arguments against the dealerships above, we need not address Chrysler's arguments except to note that they cannot serve as a basis to dismiss count II.

■ Chrysler next attacks the sufficiency of Bernhauser's complaint. To state a cause of action for civil conspiracy, the plaintiff must allege a combination of two or more persons for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means. *Adcock v. Brakegate, Ltd.*, 164 Ill. 2d 54, 62 (1994). Bernhauser alleged that Chrysler authorized and encouraged Glen Ellyn to sell Chrysler service contracts (extended-service contracts) at a price determined by the dealership and provided the dealership with preprinted applications that collected financial information, including the amount collected by the dealership from the customer for the extended-service contract. Bernhauser also alleged that Chrysler conspired with Glen Ellyn to represent that the charge for the extended-service contract was a sum certain that would be collected by and passed through the dealership to Chrysler. Bernhauser also alleged that Chrysler knowingly authorized Glen Ellyn to retain a substantial amount of the charge collected for the extended-service contract.

We believe, contrary to Chrysler's assertions, that these allegations are sufficiently specific to state a claim for conspiracy. See *Dymek v. Nyquist*, 128 Ill. App. 3d 859, 866 (1984), quoting *Ingram v. Little Company of Mary Hospital*, 108 Ill. App. 3d 456, 459 (1982) ("Plaintiff here has alleged the ultimate facts, albeit inferential, necessary to support a legally cognizable claim for civil conspiracy. We stress that '[w]hile ultimate facts necessary to support an action must be alleged, the pleader need not set forth evidence which very well may be derived from discovery subsequent to the filing of the complaint' ").

Chrysler also questions whether Bernhauser has alleged the requisite elements of conspiracy. Specifically, Chrysler challenges whether Bernhauser pleaded the element of concerted action. "A 'concert of action' occurs when a tortious [or unlawful] act is committed with another or pursuant to a common design or when one party renders substantial assistance to another knowing that the other's conduct constitutes a breach of duty [or law]." *Hume & Liechty Veterinary Associates v. Hodes*, 259 Ill. App. 3d 367, 369 (1994).

Bernhauser sufficiently pleaded concert of action. Bernhauser alleged that Chrysler both authorized Glen Ellyn's conduct and provided forms that indicated the information about the amount Glen Ellyn charged for the extended-service contracts. This was the requisite "substantial assistance" to facilitate Glen Ellyn's violation of the Consumer Fraud Act and the Truth in Lending Act. We hold that the trial court erroneously dismissed Bernhauser's conspiracy claim against Chrysler.

For the foregoing reasons, we reverse the judgments of the circuit court of Du Page County in appeal Nos. 2—96—1171 and 2—96—1174 and remand these causes for further proceedings; we dismiss appeal No. 2—96—1188 for lack of jurisdiction.

Nos. 2—96—1171, 2—96—1174—Reversed and remanded.
No. 2—96—1188—Dismissed.

GEIGER, P.J., and McLAREN, J., concur.