FIRST DIVISION

August 9, 2004

No. 1-03-1729

JOSÉ COVARRUBIAS, Indiv. and on Behalf ) Appeal from the

of All Others Similarly Situated,       ) Circuit Court of

) Cook County

Plaintiff-Appellant, )

)

v. ) )

BANCOMER, S.A., BANCOMER TRANSFER )

SERVICES, INC., and MOISES JAIMES, ) Honorable

) Peter Flynn,

Defendants-Appellees. ) Judge Presiding

JUSTICE McNULTY delivered the opinion of the court:

José Covarrubias filed a class action lawsuit against Bancomer, S.A., alleging that its money transfer service violated the Consumer Fraud and Deceptive Business Practices Act (the Act), (815 ILCS 505/2 (West 2002)).  Bancomer told customers they could send money to Mexico for a set fee.  José alleged that Bancomer misrepresented the actual amounts collected for the service.  The trial court found that José failed to allege a deceptive act or practice. José appeals.  We find that José adequately alleged a deceptive act, and therefore we reverse and remand.

On July 8, 2002, José decided to sent $100 to Marisela Garcia Covarrubias in Mexico.  He went to a post office in Chicago, where the clerk told him the fee for the transaction would be $12. José signed a transaction slip and gave the clerk $112.  That slip showed a "Net Sale Fee *** (Tarifa neta de transaccion)" of $12.  The slip specified a "Sure Money Exchg Rate *** (Tipo de cambio de Dinero Seguro)" of 9.71 pesos to the dollar, and it showed that Marisela would receive 971 pesos.  The slip also had a line that read: 

"Current Interbank Exchg Rate:        0

(Tipo de cambio interbancario vigete)."

In October 2002 José filed a complaint against Bancomer, Bancomer Transfer Services, Inc. (BTS), and Moises Jaimes, president of BTS. José alleged that Bancomer and BTS, which operated the "Dinero Seguro" money transmittal services, paid considerably less than $100 for the 971 pesos delivered to Marisela, and kept the excess as profit.  He claimed that 
defendant
s deceptively labeled the transaction.  He sought appointment as class representative and recovery of actual and punitive damages for the deception.

Defendant
s Bancomer and BTS moved to dismiss the complaint for failure to state a claim for relief.  See 735 ILCS 5/2-615 (West 2002).  The court said:

"[T]he representation, in fact, is as follows: For $12, we will transfer your $100 at a 9.71 pesos per dollar exchange rate.  That's a perfectly truthful statement.

* * *

*** [T]he issue here is whether the 
defendant
s were under a duty to disclose that the 9.71 [exchange rate] included a profit.

* * *

*** I am simply not persuaded that *** there should be imposed on Bancomer by this Court an obligation to disclose profit, which is not imposed on almost every other provider of goods or services."

The court dismissed the complaint with prejudice. José filed a timely notice of appeal.

ANALYSIS

Because the court dismissed the complaint pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS, 5/2-615 (West 2002)), we review the judgment 
de novo
.  
Oliveira v. Amoco Oil Co.
, 201 Ill. 2d 134, 147-48 (2002).  We must determine whether the facts alleged, construed in the light most favorable to 
plaintiff
, adequately state a cause of action.  
Holloway v. Meyer
, 311 
Ill. App. 3d
 818, 823 (2000).

"[T]o state a cause of action under the Consumer Fraud Act, the plaintiff must allege: (1) a deceptive act or practice; (2) the defendant intended for the plaintiff to rely on the deception; and (3) that the deception occurred in the course of conduct involving trade or commerce." 
Bernhauser v. Glen Ellyn Dodge, Inc.
, 288 
Ill. App. 3d
 984, 990 (1997).

The parties focused their arguments in the trial court and on appeal only on the first factor.

José contends that he alleged a deceptive act under the principles stated in 
Martin v. Heinold Commodities, Inc.
, 163 Ill. 2d 33 (1994).  In that case the 
plaintiff
 purchased commodity options contracts through the 
defendant
.  The 
defendant
's forms showed the price of the option, a commission, and a separate amount labeled as a "foreign service fee."  
Heinold
, 163 Ill. 2d at 38.  The 
defendant
 retained the foreign service fee as part of its commission.  The trial court held that the 
defendant
 violated the Act, and our supreme court affirmed, holding:

"By labeling a commission a foreign service fee rather than an additional commission, Heinold deceived the plaintiff class into believing the foreign service fee was an additional separate charge Heinold necessarily incurred and paid to third parties in [foreign options] transactions."  
Heinold
, 163 Ill. 2d at 51.

The appellate court applied similar reasoning in 
Bernhauser
.  The 
plaintiff
 in that case bought a car and an extended service contract.  In the itemization of the total price, the 
defendant
 listed the price of the extended service contract as "Amounts Paid to Others for You."  
Bernhauser
, 288 
Ill. App. 3d
 at 986.  The 
plaintiff
 alleged that the 
defendant
 paid only part of the amount shown to a third party, keeping the remainder as profit.  The 
defendant
 argued there, as here, that the 
plaintiff
 alleged no deception because he received exactly what the 
defendant
 said he would get for the contract price.  The 
defendant
 sold the 
plaintiff
 a car, with an extended service contract, for the price stated.  The trial court dismissed the complaint.  The appellate court held that the 
plaintiff
 had alleged a deceptive act:

"The deceptions that plaintiffs allege stem from the allegation that the dealerships did not, as they represented, pay the entire charge for the extended-service contracts to third parties but, instead, retained substantial portions of the charges. The dealerships' argument is irrelevant to plaintiffs' allegations, and, accordingly, we ignore it."  
Bernhauser
, 288 
Ill. App. 3d
 at 991.

Here 
defendant
s listed the "Net Sale Fee" as $12. 
Defendants indicated an exchange rate of 9.71 pesos to the dollar, without indicating that they paid much less than $100 for the 971 pesos.  
Defendant
s' description of the transaction would lead a reasonable consumer to believe that 
defendant
s retained only $12 as their fee, and they paid $100 to others in exchange for the 971 pesos.  We find that 
José
 has adequately pled a deceptive act.

Defendant
s contend that we should follow several federal cases concerning facts
 very similar to those José alleged here.  
In re Mexico Money Transfer Litigation
, 164 F. Supp. 2d 1002 (N.D. Ill. 2000), involved allegations that the 
defendant
s advertised that the 
plaintiff
s could "[s]end up to $300 to Mexico for only $15."  
Mexico Money
, 164 F. Supp. 2d at 1007.  The 
defendant
s charged a $15 fee, and they retained substantial additional profit by buying the number of pesos delivered for much less than the amount paid.  The parties to that case reached a settlement, and some members of the class of
 the plaintiff
s objected to the settlement.

The trial court found the multimillion dollar settlement fair.  The court evaluated the strength of the various claims and found all of them vulnerable.  The court reasoned:

"[
A]t the time of each of the challenged transactions, the class members received a receipt that sets forth the fee paid for the exchange, the exchange rate offered by Defendants, and the number of pesos that were to be conveyed to the recipient in Mexico. Although they acknowledge that the receipt does not disclose the fact that Defendants are able to purchase pesos at a more favorable exchange rate, Defendants argue that no such disclosure is required. As in any other commercial exchange, Defendants argue, they are entitled to recover a profit on their services without disclosing the amount of that profit.

Absent a legal requirement that information be disclosed, there is ordinarily no claim for fraud based on non-disclosure of the information."  
Mexico Money
, 164 F. Supp. 2d at 1014-15.

The court of appeals affirmed.
  
In re Mexico Money Transfer Litigation
, 267 F.3d 743
 (7th Cir. 2001).
  First, the court estimated the value of the settlement at somewhat more than $40 million (
Mexico Money
, 267 F.3d at 748), and then the court held that the claims did not merit any greater settlement.  The court added:

"
But since when is failure to disclose the precise difference between wholesale and retail prices for any commodity 'fraud'? 

***  Neiman Marcus does not tell customers what it paid for the clothes they buy, nor need an auto dealer reveal rebates and incentives it receives to sell cars. ***  Nothing in this transaction smacks of fraud, so the settlement cannot be attacked as too low."  
Mexico Money
, 267 F.3d 
at 749.

The trial court here apparently relied on this reasoning in deciding to dismiss the complaint.

Federal courts, like Illinois courts, have recognized that misleading descriptions of transactions can violate the Act.  In 
Alexander v. Continental Motors Werks, Inc.
, 933 F. Supp. 715 (N.D. Ill. 1996), the 
plaintiff
 alleged that an automobile dealer violated the Act when it failed to disclose that it profited from an "upcharge" on a maintenance service fee.  
Alexander
, 933 F. Supp. at 717.  The court denied the motion to dismiss the claim, despite the fact that the 
plaintiff
 received the agreed car with the agreed service contract for the agreed price.

Here, 
José
 has alleged a similarly deceptive practice. 
Defendant
s advertised that they would send $100 to Mexico for a $12 fee.  On the transaction slip they indicated a "Net Sale Fee" of $12.  The 
plaintiff
s in 
Alexander
 and 
Bernhauser
 had reason to believe that the amounts indicated for the service contracts corresponded to the cost to the dealers of those contracts, just as the 
plaintiff
 in 
Heinold
 had reason to believe that the "foreign service fee" represented a cost to that 
defendant
. 
José
 here had similar reason to believe that the pesos sent to Marisela cost 
defendant
s $100, and the $12 "Net Sale Fee" indicated the portion 
defendant
s would retain.  The allegation that 
defendant
s paid less than $100 for the pesos suffices to allege a deceptive act here.

In terms of the examples the federal court used in 
Mexico Money
, imagine a shoe salesman who says, "for a $5 fee, I'll sell you a $50 pair of shoes."  On the transaction slip he shows a "Net Sale Fee" of $5 and shoes for $50, for a total price of $55.  If the seller purchased the shoes for $40, he has described the transaction deceptively.  His net is $15, not the $5 represented.  While no law requires the seller to disclose his profit, if he represents a specific amount as his net without disclosing that he earns further profit on the transaction, he has acted deceptively.

We find 
José
's similar allegations regarding the transaction here sufficient to describe a deceptive act.  Accordingly, we reverse the judgment entered in favor of the 
defendant
s and we remand for further proceedings in accord with this opinion.

Reversed and remanded.

O'MALLEY, P.J. and GORDON, J., concur.