KATHRYN BECKETT *et al.*, Plaintiffs-Appellants, v. H&R BLOCK, INC., *et al.*, Defendants-Appellees (Bank One, Defendant-Appellee and Cross-Appellant; Stephanie Etheredge *et al.*, Plaintiffs-Appellants and Cross-Appellees).

First District (2nd Division)   No. 1—98—0064

Opinion filed June 30, 1999.

Dom J. Rizzi and Jennifer Winter Sprengel, both of Miller, Faucher, Cafferty & Wexler, L.L.P., of Chicago, for appellants.

David H. Latham, of Law Offices of David H. Latham, of Chicago, and N. Louise Ellingsworth and Mark W. Brennan, both of Bryan Cave, L.L.P., of Kansas City, Missouri, for appellees H&R Block, Inc., H&R Block Tax Services, Inc., and H&R Block Eastern Tax Services, Inc.

George A. Platz, of Lovell, White, Durrant, and Theodore R. Scarborough, of Sidley & Austin, both of Chicago, for appellee Mellon Bank.

Craig A. Varga, of Varga, Berger, Ledsky, Hayes & Casey, of Chicago, and Jeffrey S. Saltz, of Law Offices of Jeffrey S. Saltz, P.C., of Philadelphia, Pennsylvania, for appellee Bank One.

JUSTICE COUSINS delivered the opinion of the court:

This case concerns "refund anticipation loans" (RALs) made to customers of the defendant tax preparers, H&R Block, Inc., H&R Block Tax Services, Inc., and H&R Block Eastern Tax Services, Inc. (collectively, Block). RALs are short-term demand loans to be repaid by the borrowers' anticipated federal income tax refunds. Block has agreements with various banks to provide the loans. Block would advertise this service as part of its "Rapid Refund" program.

In order to obtain a RAL, a customer must file his or her tax return electronically through Block. The customer also fills out a RAL application, which Block forwards to a participating bank. The bank then advances a loan against the customer's income tax refund. The refund, when issued, goes into an account established by the bank and is used to pay off the loan. The customer receives a check within five days. A stub with disclosures mandated under the Truth in Lending Act (TILA) (15 U.S.C. §§ 1601 through 1667e (1994)) is attached to the check. On the back of the check is a loan agreement, stating that by endorsing and negotiating the check the customer agrees to its terms.

According to the plaintiffs, the RAL application conceals much of the true cost of the loan, and Block misrepresents that the finance charge all goes to the bank, when in fact some of it is kept by or sent back to Block.

The case was originally brought as a federal class action in the northern district of Illinois, alleging violations of TILA and the Illinois Consumer Fraud and Deceptive Business Practices Act (Act or Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 1994)). Defendant Bank One filed a motion to dismiss the claims against it for lack of standing. None of the named class representatives in the federal suit had obtained a RAL from Bank One. The defendants also jointly filed a motion to dismiss for failure to state a claim, arguing that the complaint did not allege that they had done anything that violated TILA. United States District Court Judge Holderman dismissed the TILA claim under Federal Rule of Civil Procedure 12(b)(6), holding that the record conclusively showed that Block and the banks had complied with TILA. Fed. R. Civ. P. 12(b)(6). Judge Holderman declined to exercise jurisdiction over the remaining state law claims, dismissing them without prejudice. *Beckett v. H&R Block, Inc.*, No. 94 C 776 (N.D. Ill. December 12, 1994) (*Beckett I*).

One of the class representatives, Kathryn Beckett, along with two new plaintiffs, Stephanie Etheredge and Pamela Williams, then filed a class action in Cook County circuit court alleging violations of the Consumer Fraud Act and common law breach of fiduciary duty against Block as well as Mellon Bank and Bank One, the lending institutions that had provided the RALs to the named plaintiffs. Attached to the complaint were exhibits, including the RAL applications and some of the loan checks and check stubs with the TILA disclosures. Bank One filed a section 2—619 motion to dismiss based on the statute of limitations, which the court denied. 735 ILCS 5/2—619 (West 1994). The banks jointly filed a section 2—615 motion to dismiss arguing that, since their disclosures were authorized by TILA, they could not violate the Consumer Fraud Act, and, furthermore, that there was no agency

relationship between the plaintiffs and the banks upon which to predicate a fiduciary duty. 735 ILCS 5/2—615 (West 1994). The court granted the section 2—615 motion. Finally the court granted Block's motion to strike counts I and II of the complaint, but gave leave to amend.

Shortly afterwards, the plaintiffs filed an amended complaint against Block only. This complaint added the charge that Block violated the Act by engaging in a "bait and switch" scheme, in which Block would lure the customer by stating low finance charges on the RAL application and then disclose the true higher finance charge only when the customer received the check. Upon request of plaintiffs' counsel, Mellon agreed to include an affidavit stating that the printouts detailing Etheredge's and Williams' loans from Mellon were correct.

Block made a section 2—615 motion to dismiss, arguing that: (1) the allegedly deceptive forms were the banks'; (2) the forms accurately set out all required disclosures; (3) its compliance with TILA barred any claim under the Act; and (4) there was no basis for a finding that Block was its customers' agent for the purposes of the RAL transaction. The plaintiffs unsuccessfully moved to strike the section 2—615 motion on the basis that it raised factual matters outside the complaint. The trial court granted the section 2—615 motion and dismissed the remaining claims with prejudice.

The plaintiffs now appeal the dismissal of their claims against both Block and the bank defendants and the denial of their motion to strike Block's section 2—615 motion to dismiss. Bank One cross-appeals the denial of its section 2—619 motion to dismiss the claim against it under the statute of limitations.

FACTS

Each of the plaintiffs applied for and received a RAL through Mellon Bank. Plaintiffs Williams and Etheredge also applied for and received RALs through Bank One. In each case, the defendants assert, the finance charge was $29. The Mellon RAL application contains the following disclosure statement:

> "The FINANCE CHARGE for your RAL is set forth in section 6 below. Fees are also charged for the completion and electronic filing of your income tax return by your tax preparer/electronic filer. You are responsible for these fees and the repayment of the loan whether or not your tax refund is paid in whole or in part.
>
> Your income tax return can be filed electronically without obtaining a RAL and the average time within which you can expect to receive a refund if you file electronically and without a RAL is two

to three weeks. Alternatively, if you elect to obtain a RAL the loan proceeds will be made available to you within approximately two to five days of your loan approval.

The usual duration of a RAL is approximately two weeks. The following are examples of the ANNUAL PERCENTAGE RATES for hypothetical RALs of varying amounts, having a RAL FINANCE CHARGE of $29.00 or $38.00, with 14 day maturity periods."

| "Hypothetical Loan Amount | RAL—$29 FINANCE CHARGE ANNUAL PERCENTAGE RATE | RAL—$38 FINANCE CHARGE ANNUAL PERCENTAGE RATE |
| --- | --- | --- |
| $ 500.00 | 151% | 198% |
| $ 750.00 | 101% | 132% |
| $1,000.00 | 76% | 99% |
| $1,500.00 | 50% | 66% |
| $2,000.00 | 38% | 50% |
| $3,000.00 | 25% | 33%." |

The Bank One RAL application contains a substantially similar statement.

Plaintiff Beckett prepared her own taxes. On one of Beckett's application forms, the finance charge was filled in as $64 rather than $29. On the other, the finance charge was left blank.

The check stubs from Mellon have a box labeled "Truth-in-Lending Disclosures." Ms. Beckett's 1994 check stub is used as an example:

| "Truth-In Lending Disclosures | |
| --- | --- |
| 1. Amount financed (the amount of credit provided to you or on your behalf) | $533.00 |
| 2. FINANCE CHARGE (the dollar amount the credit will cost you) | $ 29.00 |
| 3. Total of Payments (the amount you will have paid after you have made all scheduled payments) | $562.00 |
| 4. ANNUAL PERCENTAGE RATE (the cost of your credit as an estimated yearly rate) | 141.852%." |

Beside the TILA box on the check stub is a section entitled "Itemization of Amount Financed," which provides, once again using Ms. Beckett's 1994 stub as an example:

"1. Amount paid directly to you                          $ 498
2. Amount paid to H&R Block                          $  35
3. Amount financed (Items 1+2)                       $ 533
4. Prepaid finance charge (Itemized below)           $  29
     a. Amt. Paid to Mellon Bank                     $  29
5. Total Refund Anticipation Loan                    $ 562
     (Items 3+4)."

Plaintiff Etheredge also prepared her own taxes, but she did not attach the RAL applications and check stubs to her complaint. Block prepared Williams' taxes. Her receipt discloses a charge of $60 paid to Block ($35 for preparation of her return and $25 for electronic filing).

## ANALYSIS

### I

### A

The plaintiffs first contend that the defendants violated the Act by: (1) not including the electronic filing fee in the finance charge; (2) not including the electronic filing fee in their calculations of the annual percentage rate (APR) of the loan; (3) attracting customers by providing unrealistically low APRs in the examples on the RAL applications; and (4) using misleading and deceptive business forms.

Defendants argue in response that the Act claims were properly dismissed due to the district court's decision in *Beckett I*. In *Beckett I*, the plaintiffs alleged that Block and the banks did not make disclosures that were required by TILA and that the disclosures that were made were not timely. *Beckett v. H&R Block, Inc.*, No. 94 C 776 (N.D. Ill. December 12, 1994).

The disclosures were not timely, the plaintiffs argued, because Block's clients entered into the RAL agreement when they signed the purported RAL application. The truth-in-lending disclosures that subsequently came on the check stub were provided too late. The court, however, ruled that the RAL application was merely an application and not a contract and that the loan agreement on the back of the check was the actual contract. TILA only required that the disclosures be made prior to the consummation of the agreement. Since the plaintiffs were provided with the disclosures on the check stub before they signed the check, the disclosures were timely. *Beckett I*, slip op. at 2.

The court also ruled that the disclosures in question were sufficient under TILA:

> "Based on these exhibits, plaintiffs cannot prove any inadequacy with the content of the credit information and thus, plaintiffs have

failed to state a claim of deficient disclosures." *Beckett I*, slip op. at 2.

■ ■ Plaintiffs are collaterally estopped from relitigating the question of whether the disclosures made by defendants were sufficient under TILA. In order for collateral estoppel to apply, (1) the issue decided in the prior suit must be identical to the issue presented in the pending suit; (2) there must have been a final judgment on the merits in the prior adjudication; and (3) the party against whom estoppel is asserted must be a party to the prior suit or in privity with a party in that suit. *Hexacomb Corp. v. Corrugated Systems, Inc.*, 287 Ill. App. 3d 623, 631, 678 N.E.2d 765, 771 (1997). The court's ruling in *Beckett I*, that plaintiffs as a matter of law could not prove inadequacy of the credit information, was on the merits of the plaintiffs' claim. *Keilholz v. Chicago & North Western Ry. Co.*, 59 Ill. 2d 34, 35, 319 N.E.2d 46, 47 (1974). The decision is final, in that the potential for appellate review has been exhausted. *Ballweg v. City of Springfield*, 114 Ill. 2d 107, 113, 499 N.E.2d 1373, 1375 (1986). The *Beckett I* plaintiffs asserted that they were adequate representatives for those who had received RAL's through Mellon. Etheredge and Williams were members of that class. Although they were not named parties in the federal class action, the decision in a class action is generally binding on all members of the class. *Consolidated Distilled Products, Inc. v. Allphin*, 73 Ill. 2d 19, 26, 382 N.E.2d 217, 219 (1978). For prior adjudication purposes, Etheredge and Williams are considered parties to the federal class action. Thus they cannot challenge the sufficiency of the disclosures under TILA.

■ Plaintiffs attack the sufficiency of the disclosures under the Consumer Fraud Act. However, if the disclosures were sufficient under TILA, they were also sufficient under the Act. *Lanier v. Associates Finance, Inc.*, 114 Ill. 2d 1, 499 N.E.2d 440 (1986). In *Lanier*, the Illinois Supreme Court held that the Act does not require more extensive disclosure than TILA. The plaintiffs in *Lanier* alleged that the defendant violated the Act by not disclosing harsh effects of loan prepayment under the so-called "Rule of 78's." The court determined that the disclosures were sufficient under TILA. The issue before the *Lanier* court was whether disclosures that were adequate under TILA were also adequate under the Act. The court ruled that they were, finding that "the Consumer Fraud Act's general prohibition of fraud and misrepresentation in consumer transactions did not require more extensive disclosure in the plaintiff's loan agreement than the disclosure required by the comprehensive provisions of the Truth in Lending Act." *Lanier*, 114 Ill. 2d at 17, 499 N.E.2d at 447.

■ Although *Lanier*, in combination with *Beckett I*, is generally

dispositive of the Consumer Fraud Act complaints in the instant case, we will address plaintiffs' specific claims. First we address the plaintiffs' contention that the defendants violated the Act by not including the $35 electronic filing fee in the finance charge. The Act excludes from liability "[a]ctions *** specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of *** the United States." 815 ILCS 505/10b(1) (West 1994). TILA provides that the finance charge "does not include charges of a type payable in a comparable cash transaction." 15 U.S.C. § 1605(a) (1994). As the court in *Basile v. H&R Block*, 897 F. Supp. 194 (E.D. Pa. 1995), stated, "the electronic filing fee is a charge 'of the type payable in a comparable cash transaction' and is not an element of the finance charge." *Basile*, 897 F. Supp. at 198, quoting 12 C.F.R. pt. 226, at 303 (1995). Thus, the defendants were specifically authorized not to include the electronic filing fee in the finance charge and calculate the annual percentage rate on that basis. In fact, it would have been a violation of TILA if they had.

For the same reasons, the plaintiffs' claim that the APR is incorrect fails. The APR is calculated based on the finance charge. 15 U.S.C. § 1638(a)(4) (1994). Since the defendants complied with TILA in calculating the finance charge and the APR, under *Lanier*, they could not thereby have violated the Act.

Similarly, the plaintiffs cannot state a Consumer Fraud Act claim under a "bait and switch" theory. The plaintiffs alleged that the defendants lured the customers with the promise of a low finance charge and APR, and then switched them to a higher charge. But TILA would not permit the defendants to include the electronic filing fee in the finance charge and calculate the APR on that basis, as the plaintiffs argue they should have. Since the finance charge and APR on both the RAL applications and the check stubs were calculated as directed by TILA, under *Lanier*, they cannot violate the Act. *Lanier*, 114 Ill. 2d at 17-18, 499 N.E.2d at 447.

Finally, the plaintiffs' claim that the forms used were misleading and deceptive under the Act is precluded. The plaintiffs allege that "different RAL charges are disclosed on the RAL Application, the RAL check stub, and the customers' RAL receipt." However, the *Beckett I* court determined that the disclosures satisfied TILA. The Act does not require any further disclosure. *Lanier*, 114 Ill. 2d at 17-18, 499 N.E.2d at 447.

## B

Plaintiffs also claim that line 4a of the "Itemization of Amount Financed" section of the check stub falsely represents that the entire finance charge goes to the bank:

"1. Amount paid directly to you                     $ 498
2. Amount paid to H&R Block                         $  35
3. Amount financed (Items 1+2)                      $ 533
4. Prepaid finance charge (Itemized below)          $  29
   a. Amt. Paid to Mellon Bank      $  29
5. Total Refund Anticipation Loan                   $ 562
   (Items 3+4)."

According to the plaintiffs, this was not merely a failure to disclose information that TILA did not require but, rather, was an affirmative misrepresentation. While *Lanier* held that the Act does not require more extensive disclosure than TILA, we do not read *Lanier* to connote that any further disclosures a lender chooses to make are immune from liability under the Act, even if false. Plaintiffs contend that TILA and the holding in *Beckett I* do not cover this alleged falsehood. For authority the plaintiffs point to *Bernhauser v. Glen Ellyn Dodge, Inc.*, 288 Ill. App. 3d 984, 683 N.E.2d 1194 (1997).

In *Bernhauser*, a plaintiff sued a car dealership under the Act because the dealership stated that the charge for an extended service contract went to third parties, when in fact most of it was retained by the dealership. The court ruled that even though the customer was not misled as to the total cost of the extended service contract, misrepresentation of the party to whom the money was being paid was sufficient to state a claim under the Act. *Bernhauser*, 288 Ill. App. 3d at 991, 683 N.E.2d at 1200. The *Bernhauser* court intimated that TILA compliance would not be an effective defense against such a charge, but it did not reach the issue since it held that the dealership had not complied with TILA. *Bernhauser*, 288 Ill. App. 3d at 991-92, 683 N.E.2d at 1200-01.

█ In our view, however, the facts in *Bernhauser* are not analogous to the facts in the instant case, because the instant case involves a failure to disclose a fact rather than an affirmative misrepresentation of fact as found in *Bernhauser*. In *Bernhauser* the affirmative misrepresentation of fact was that money went to a third party when it did not. In this case, however, the money for the finance charge did in fact go to Mellon, albeit the defendants failed to disclose that Mellon then paid some of the money from that finance charge to Block. We hold that the disclosures provided by the defendants in the instant case conformed with TILA and, pursuant to *Lanier*, a claim under the Act against the defendants cannot be maintained.

However, in so holding on this issue we are not unmindful of the following statement by the Illinois Supreme Court in *Lanier*:

"We decline, therefore, to restrict or prohibit use of the Rule of

78's on public policy grounds, but we urge the legislature to promptly consider this matter which reflects an apparent injustice under the law as it currently exists." *Lanier*, 114 Ill. 2d at 18, 499 N.E.2d at 447.

Similarly, we are not enthralled with at least an appearance of misrepresentation occasioned by kickbacks in consumer transactions as exemplified in the instant case. However, in this case, the decision by the Illinois Supreme Court in *Lanier* bars the Consumer Fraud Act claims based on kickbacks by the banks to Block of some of the finance charges. On this issue, the Illinois Supreme Court, in *Lanier*, wrote:

> "Because the Illinois consumer credit statutes requiring specific disclosures are met by compliance with the Truth in Lending Act, we believe that the Consumer Fraud Act's general prohibition of fraud and misrepresentation in consumer transactions did not require more extensive disclosure in the plaintiff's loan agreement than the disclosure required by the comprehensive provisions of the Truth in Lending Act. Rather, we perceive in the disclosure provisions of Illinois' consumer credit statutes a consistent policy against extending disclosure requirements under Illinois law beyond those mandated by the Truth in Lending Act, in situations where both the Act and Illinois statutes apply.

> Section 10b(1) of the Consumer Fraud Act provides that the Consumer Fraud Act does not apply to '[a]ctions or transactions specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of this State or the United States.' (Ill. Rev. Stat. 1981, ch. 121½, par. 270b(1).) Under this provision, *conduct which is authorized by Federal statutes and regulations* \*\*\* *is exempt from liability under the Consumer Fraud Act*." (Emphasis added.) *Lanier*, 114 Ill. 2d at 17, 499 N.E.2d at 447.

Any change in the policy against extending disclosure requirements under the Illinois law beyond those mandated by the Truth in Lending Act is reposed with the legislature, not the courts.

## II

The plaintiffs' next claim is for breach of fiduciary duty. The plaintiffs contend that Block was their agent for the purposes of the RAL transaction and, therefore, owed them a fiduciary duty. *Letsos v. Century 21-New West Realty*, 285 Ill. App. 3d 1056, 1064, 675 N.E.2d 217, 224 (1996). This duty, they argue, was breached. The trial court dismissed this claim, finding that there was no evidence to support the finding of an agency relationship.

■ Whether particular circumstances exist that could establish an agency relationship is often a question of fact. However, a plaintiff

"must still plead facts, which, if proved, could establish the existence of an agency relationship." *Knapp v. Hill*, 276 Ill. App. 3d 376, 382, 657 N.E.2d 1068, 1072 (1995). The court was correct in finding that the plaintiffs failed to plead such facts.

In their brief the plaintiffs argue that the trial court erred in dismissing breach of fiduciary duty counts against Bank One and Mellon. However, we note that the complaint itself only alleges a breach of fiduciary duty against Block. Although the plaintiffs alleged that there was an agency relationship between them and the banks for the purposes of the RAL transaction, they did not allege a violation by the banks of any fiduciary duty based on the purported agency relationship.

The plaintiffs did, however, allege that Block violated its fiduciary duty. They alleged that Block made a secret profit consisting of the rebate of part of the $29 dollar finance charge. This secret profit, they argue, must now be disgorged. The plaintiffs are incorrect, because the requisite elements of an agency relationship were not present. While not binding on this court, an instructive case is *Peterson v. H&R Block Tax Services, Inc.*, 971 F. Supp. 1204 (N.D. Ill. 1997).

In *Peterson*, a plaintiff who had Block prepare her taxes brought a breach of fiduciary duty claim against Block in connection with the RAL program. The plaintiff first argued that the tax adviser/client relationship was fiduciary as a matter of law. The court disagreed. *Peterson*, 971 F. Supp. at 1213. The plaintiff also argued that there was an agency relationship between her and Block in the context of the RAL transaction and that a fiduciary duty arose on that basis. Again, the district court disagreed. The court noted two essential components of an agency relationship: first, "the principal has the right to control the manner and method in which the agent performs work for her"; and second, "the agent has the power to subject the principal to personal liability." *Peterson*, 971 F. Supp. at 1213. The pleadings showed that, while the plaintiff made the decision to engage Block's services, Block had total control over the manner and method of carrying out the tax preparation. *Peterson*, 971 F. Supp. at 1213. Similarly, in the instant case, the plaintiffs have not alleged that they were able to control the manner and method of the work that Block performed for them.

Furthermore, Block did not have the power to subject the plaintiffs in the instant case to liability with respect to the RAL transaction. Block carried the RAL application form from the bank to the client and from the client to the bank. But whether to enter into the RAL agreement was a decision the customer made by signing the loan check. Block did not have the power to enter into this agreement on the customer's behalf. Thus, Block was not the client's agent.

During argument the plaintiff contended that *Peterson* is inapposite because, in *Peterson*, there was a tax advisor/client relationship; whereas, here, the relationship was not a tax advisor/client relationship. Plaintiffs' argument is unpersuasive. In our view, the lack of a tax advisor/client relationship in the instant case weakens rather than strengthens the plaintiffs' claim on this issue.

### III

■ Finally, although we are inclined to agree with Bank One that its section 2—619 motion should have been granted, since we have affirmed the dismissal of Bank One based on its joint section 2—615 motion with Mellon, there is no need for us to reach Bank One's cross-appeal and make an analysis thereof.

The decision of the trial court is affirmed.

Affirmed.

RAKOWSKI and McNULTY, JJ., concur.