CANDACE PAWLIKOWSKI, Indiv. and on Behalf of Those Similarly Situated, Plaintiff-Appellant, v. TOYOTA MOTOR CREDIT CORPORATION, Defendant-Appellee.

Second District   No. 2—98—1649

Opinion filed December 23, 1999.

Daniel A. Edelman, Cathleen M. Combs, James O. Latturner, Jeffrey S. Sell, and Jamie S. Franklin, all of Edelman, Combs & Latturner, of Chicago, and Lawrence A. Stein, of Huck, Bouma, Martin, Charlton & Bradshaw, P.C., of Wheaton, and Vincent L. DiTommaso, of DiTommaso & Associates, of Oak Brook, for appellant.

Thomas M. Crisham and Jean M. Prendergast, both of Quinlan & Crisham, Ltd., of Chicago, for appellee.

JUSTICE GEIGER delivered the opinion of the court:

The plaintiff, Candace Pawlikowski, appeals from the November 23, 1998, order of the circuit court of Du Page County dismissing, with prejudice, counts IV, V, and VI of her third amended complaint against the defendant, Toyota Motor Credit Corporation (TMCC). The plaintiff contends that she has sufficiently alleged causes of action for fraudulent misrepresentation, violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (the Consumer Fraud Act) (815 ILCS 505/2 (West 1998)), and restitution to survive TMCC's motion to dismiss brought pursuant to section 2—615 of the Code of Civil Procedure (the Code) (735 ILCS 5/2—615 (West 1998)). We affirm in part and reverse in part.

## I. Background

On February 24, 1994, the plaintiff filed her class action complaint against TMCC and Arlington Toyota, Inc. (Arlington), concerning a retail installment contract for the sale of a motor vehicle and an extended warranty. The plaintiff alleged that she had entered into the retail installment contract on May 6, 1991, with Arlington. The contract was later assigned by Arlington to TMCC, a finance company. The plaintiff further alleged that the retail installment contract contained a certain disclosure as follows:

"OTHER CHARGES INCLUDING AMOUNTS PAID TO OTHERS ON YOUR BEHALF:

\*\*\*

C. Cost of Optional Mechanical Breakdown Protection Paid to the MBP Company Named Below—Covering Certain Mechanical Repairs <u>MECHANICAL BREAKDOWN INS. $900.00</u>"

The plaintiff further alleged that although the retail installment contract provided that $900 was paid to the MBP (warranty company), this statement was misleading. The plaintiff alleged that the amount actually paid to the warranty company was substantially less, with the difference (upcharge) retained by Arlington.

This cause was certified to proceed as a class action on January 3, 1995. Thereafter, a class member filed an objection to a proposed settlement agreement. Following the trial court's denial of the objection and entry of an order approving the settlement, this court entered an order pursuant to Supreme Court Rule 23 (166 Ill. 2d R. 23) reversing the trial court's order approving the settlement and remanding the cause for further proceedings. See *Pawlikowski v. Grant-Davis*, 287 Ill. App. 3d 1124 (1997) (unpublished order under Supreme Court Rule 23).

On August 26, 1998, the plaintiff filed her third amended complaint. Counts I, II, and III were directed at Arlington and are not at issue in this appeal. Counts IV, V, and VI were brought against TMCC. Count IV alleged fraudulent misrepresentation; count V, violations of the Consumer Fraud Act; and count VI, restitution. In count IV, the plaintiff alleged that TMCC had "printed and distributed" the form retail installment contract. The plaintiff also alleged that TMCC had conspired with Arlington to defraud consumers when TMCC knew that Arlington would retain an upcharge. In count V, the plaintiff alleged that TMCC had failed to advise the plaintiff of the misstatement on the retail installment contract. In count VI, the plaintiff alleged that TMCC had unjustly kept monies belonging to the plaintiff and requested "restitution."

On September 23, 1998, TMCC filed a motion to dismiss counts IV, V, and VI pursuant to section 2—615 of the Code. In its motion, TMCC argued that the plaintiff had failed to state viable causes of action and that the causes were not pled with specificity. TMCC contended that it was not liable under the Consumer Fraud Act as an assignee of the retail installment contract and that the plaintiff had failed to allege specifically the nature of the fraudulent conduct. TMCC also argued that it could not be held liable for fraud committed by Arlington.

On November 23, 1998, the trial court granted TMCC's motion to dismiss, with prejudice. The plaintiff filed a timely notice of appeal.

## II. Discussion

On appeal, the plaintiff argues that (1) TMCC's "involvement" in the misstatement on the retail installment contract renders it liable for fraudulent misrepresentation and under the Consumer Fraud Act; (2) TMCC is liable under the preservation of claims provision of the retail installment contract; (3) her causes of action for fraudulent misrepresentation and under the Consumer Fraud Act were pled with sufficient specificity; and (4) restitution is a valid, independent cause of action. TMCC reasserts on appeal the same arguments made at the trial level and, in addition, requests that we review the trial court's order certifying the plaintiff class.

■ Because the complaint was dismissed in response to a section 2—615 motion to dismiss, the only question before this court is whether the allegations of the complaint, when viewed in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted. *Vernon v. Schuster*, 179 Ill. 2d 338, 344 (1997). The issue is one of law, and our review is *de novo*. *Vernon*, 179 Ill. 2d at 344.

In reviewing a dismissal under section 2—615 of the Code, we must take all well-pleaded facts in the complaint as true and draw all reasonable inferences from those facts that are favorable to the pleader. *Ziemba v. Mierzwa*, 142 Ill. 2d 42, 47 (1991). However, we will not take conclusions of law or fact as true unless they are supported by specific factual allegations. *Ziemba*, 142 Ill. 2d at 47. A cause of action should not be dismissed on the pleadings unless it is apparent that no set of facts can be proven that would entitle the plaintiff to recover. *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 488 (1994).

### A. Consumer Fraud Act

For her first contention on appeal, the plaintiff argues that she has properly stated a cause of action under the Consumer Fraud Act. TMCC argues that the plaintiff cannot state a claim under the Consumer Fraud Act because TMCC is not liable under the federal Truth in Lending Act (TILA) (15 U.S.C. § 1641(a) (1994)), which serves as a bar to liability under the Consumer Fraud Act. TMCC also argues that it cannot be held "secondarily" liable for fraud committed by Arlington. TMCC further argues that the plaintiff has failed to plead any facts regarding TMCC's involvement in the transaction at issue. Prior to addressing whether the plaintiff has pled her cause of action with sufficient specificity, we turn to the question of whether the plaintiff is barred as a matter of law from asserting a claim under the Consumer Fraud Act against TMCC.

■ We first address whether the plaintiff may state a cause of ac-

tion under the Consumer Fraud Act against TMCC regardless of TMCC's liability under TILA. The Consumer Fraud Act prohibits any concealment, suppression, or omission of any material fact in trade or commerce with the intent that others rely upon the concealment, suppression, or omission. *Perona v. Volkswagen of America, Inc.*, 292 Ill. App. 3d 59, 65 (1997).

TMCC relies upon the court's decision in *Lanier v. Associates Finance, Inc.*, 114 Ill. 2d 1 (1986), in support of its argument that its alleged compliance with TILA bars liability under the Consumer Fraud Act. In *Lanier*, the court considered whether the plaintiff could state a cause of action under the Consumer Fraud Act based upon a certain disclosure contained in a loan document. The disclosure provided that the "Rule of 78's" method of accounting would be utilized to calculate the interest refund on prepayment of the loan. *Lanier*, 114 Ill. 2d at 5. The plaintiff argued that she did not understand the "Rule of 78's" method and that she believed that she would receive a greater credit for prepayment than she actually did. *Lanier*, 114 Ill. 2d at 6. At issue was whether the defendant had complied with TILA and, if so, whether compliance would bar liability under the Consumer Fraud Act. *Lanier*, 114 Ill. 2d at 11.

The court noted that, pursuant to section 10b of the Consumer Fraud Act, the Consumer Fraud Act does not apply to "[a]ctions or transactions specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of this State or the United States." 815 ILCS 505/10b(1) (West 1998). The court interpreted this provision to mean that "conduct which is authorized by Federal statutes and regulations, such as those administered by the Federal Reserve Board, is exempt from liability under the Consumer Fraud Act." *Lanier*, 114 Ill. 2d at 17-18. In concluding that the defendant had not violated the Consumer Fraud Act, the court noted that the loan disclosure documents were authorized by federal regulations, despite the fact that the "Rule of 78's" method of accounting was not explained. *Lanier*, 114 Ill. 2d at 16. Because the defendant in *Lanier* had complied with TILA's disclosure requirements, it was not liable under the Consumer Fraud Act. *Lanier*, 114 Ill. 2d at 18.

TMCC argues that *Lanier* should operate to automatically bar liability under the Consumer Fraud Act because, according to TMCC, it is not liable under TILA. This court has considered and rejected previously the expansive reading of *Lanier* urged by TMCC. In *Bernhauser v. Glen Ellyn Dodge, Inc.*, 288 Ill. App. 3d 984 (1997), we considered whether the plaintiff had adequately stated a cause of action under the Consumer Fraud Act against an automobile dealership. The

plaintiff's cause of action stemmed from the purchase of a car and an extended service contract. The plaintiff alleged that the retail installment contract indicated that the fee for the extended service contract was being paid to a third party. The plaintiff alleged that, instead of passing on the charge, the dealership paid a small amount as an administrative fee to a third party and kept the rest as profit. *Bernhauser*, 288 Ill. App. 3d at 986-87. We note that the plaintiff's allegations regarding the nature of the misrepresentation on the retail installment contract and the upcharge retained by the dealership are identical to the allegations contained in the present case.

The dealership argued that the retail installment contract was in compliance with the mandates of TILA. *Bernhauser*, 288 Ill. App. 3d at 991. Relying on *Lanier*, the dealership argued that its compliance with TILA barred liability under the Consumer Fraud Act. We first considered and rejected the defendant's argument that compliance with TILA would provide a complete defense to claims under the Consumer Fraud Act. *Bernhauser*, 288 Ill. App. 3d at 991-92. In so ruling, we noted:

> "We do not read *Lanier* as expansively as do the dealerships. Instead, we choose to take *Lanier* at its word, for the supreme court limited its holding to the case, stating that 'the defendant's compliance with the disclosure requirements of [TILA] is a defense to liability under the *** Consumer Fraud Act *in the present case*.' "
> (Emphasis in original.) *Bernhauser*, 288 Ill. App. 3d at 991-92, quoting *Lanier*, 114 Ill. 2d at 18.

We then determined that the disclosure on the retail installment contract did not comply with the mandates of TILA. We therefore reversed the trial court's dismissal of the Consumer Fraud Act cause of action against the dealership. *Bernhauser*, 288 Ill. App. 3d at 995.

The viability of a cause of action under the Consumer Fraud Act against TMCC regardless of TMCC's liability under TILA is supported by two federal district court cases addressing precisely the same issue under the same facts. At the outset, we note that decisions of the United States District Court are not binding upon state courts and are held to be no more than persuasive authority. *People v. Qualls*, 233 Ill. App. 3d 394, 397-98 (1992). In the absence of any Illinois decision that speaks directly to the issue of whether a cause of action under the Consumer Fraud Act may be stated against a third-party finance company for the type of misrepresentation at issue here, we find the reasoning employed by the federal district courts persuasive.

In *Fillinger v. Willowbrook Ford, Inc.*, No. 96 C 2357 (N.D. Ill. March 26, 1999), the plaintiffs brought a class action suit under TILA and the Consumer Fraud Act against the defendants, Willowbrook

Ford, Inc. (Willowbrook), a car dealership, and Ford Motor Credit Company (FMCC), a finance company. The plaintiffs alleged that they had purchased extended warranties and service contracts from Willowbrook; that the retail installment contract provided that Willowbrook had paid the fee for the warranties and service contracts to FMCC; and that Willowbrook had actually retained most of the fee. *Fillinger*, slip op. at 1. At issue was FMCC's motion to dismiss for failure to state a claim.

Relying on the opinion in *Taylor v. Quality Hyundai, Inc.*, 150 F.3d 689 (7th Cir. 1998), FMCC argued that, as an assignee, it could not be held liable by the plaintiffs under TILA unless a violation of the disclosure requirements was apparent on the face of the retail installment contract. The *Taylor* court applied section 1641(a) of TILA to preclude assignee liability under TILA for the misrepresentation on the retail installment contract. *Taylor*, 150 F.3d at 695. Section 1641(a) provides that a civil action may be brought against an assignee "only if the violation *** is apparent on the face of the disclosure statement." 15 U.S.C. § 1641(a) (1994). In its holding, the *Taylor* court explained that TILA could not be read to impose a duty upon an assignee of a contract to seek out additional information from the original creditor in order to determine whether the contract document was misleading. *Taylor*, 150 F.3d at 695.

Although the parties in *Fillinger* agreed that *Taylor* mandated the dismissal of the plaintiffs' TILA claim against FMCC, the district court rejected FMCC's argument that *Taylor* should serve to bar liability under the Consumer Fraud Act. *Fillinger*, slip op. at 1. The district court noted that *Taylor* did not mention state claims and declined to find that it would operate to bar liability of an assignee under the Consumer Fraud Act. *Fillinger*, slip op. at 1.

The *Fillinger* court also noted that *Lanier* did not support FMCC's argument that the plaintiffs' Consumer Fraud Act claim should be dismissed with prejudice. *Fillinger*, slip op. at 2. Unlike the defendant in *Lanier*, FMCC did not argue that the disclosure in the retail installment contract complied with TILA or that FMCC's conduct was authorized by a federal statute or regulation. After refusing to dismiss the plaintiffs' Consumer Fraud Act claim against FMCC with prejudice, the district court declined to exercise supplemental jurisdiction and dismissed the Consumer Fraud Act claim without prejudice. *Fillinger*, slip op. at 3.

In *Cheng v. Rizza Chevrolet*, No. 97 C 1711 (N.D. Ill. April 7, 1999), the plaintiff filed a class action against Rizza Chevrolet (Rizza) and FMCC alleging that Rizza misrepresented the amount it disbursed to FMCC for issuing a warranty and that Rizza retained part of the war-

ranty charge it had collected from the plaintiff. The plaintiff alleged that Rizza and FMCC had violated the Consumer Fraud Act. At issue was FMCC's motion to dismiss for failure to state a claim. *Cheng*, slip op. at 2.

Relying on *Taylor*, FMCC argued that the plaintiff was unable to state a claim against it under TILA because it was an assignee of the retail installment contract and because there was no TILA violation apparent on the face of the disclosure document. FMCC further argued that because the plaintiff's TILA claim failed, the Consumer Fraud Act claim must also fail. *Cheng*, slip op. at 3.

The district court rejected FMCC's arguments and cited its approval of the holding in *Fillinger*. *Cheng*, slip op. at 5. The district court reasoned that the holding in *Lanier* was limited, in that only a creditor's "actual compliance" with TILA would bar liability under the Consumer Fraud Act. *Cheng*, slip op. at 5. The district court explained that FMCC, as an assignee, did not draft the disclosure documents and, therefore, the TILA affirmative defense to the Consumer Fraud Act claim was not available to FMCC. *Cheng*, slip op. at 5. The district court held that it could not say at that stage of the litigation that it was impossible for the plaintiff to prevail under the Consumer Fraud Act pursuant to any set of facts and denied that portion of the motion to dismiss pertaining to the plaintiff's Consumer Fraud Act claim. *Cheng*, slip op. at 6.

■ In this case, TMCC's argument that it is not liable under TILA does nothing to support its position that the plaintiff cannot state a cause of action against TMCC under the Consumer Fraud Act. At the outset, we note that the plaintiff cannot assert a claim under TILA against TMCC in this case because section 1641(a) of TILA limits the circumstances under which an assignee may be liable for the acts of the original creditor. 15 U.S.C. § 1641(a) (1994). Moreover, TMCC's conduct was not "authorized by" TILA so as to bring it within the mandates of the holding in *Lanier*. Indeed, TMCC did nothing that was affirmatively condoned by TILA. The fact that TMCC is not liable under TILA cannot automatically translate into a finding that TMCC did not engage in an unfair and deceptive practice under the Consumer Fraud Act. For this reason, we are persuaded by the reasoning in *Bernhauser*, *Fillinger*, and *Rizza*, and we conclude that TMCC's escape from liability under TILA does not serve as an affirmative defense to the plaintiff's Consumer Fraud Act cause of action.

TMCC has supplemented its appellee brief with two recent cases, *Weatherman v. Gary-Wheaton Bank of Fox Valley, N.A.*, 186 Ill. 2d 472 (1999), and *Beckett v. H&R Block, Inc.*, 306 Ill. App. 3d 381 (1999). We are unpersuaded that the holdings from either *Weatherman* or *Beckett* are applicable to the present case.

In *Weatherman*, the plaintiff brought a Consumer Fraud Act claim against a mortgage lender with regard to certain fees for recording the mortgage assignment and for suspending the tax escrow. *Weatherman*, 186 Ill. 2d at 477. The trial court had granted the lender's motion to dismiss with regard to the escrow fee and denied the motion with regard to the recording fee. The trial court also certified the question of whether a lender violates the Consumer Fraud Act when it provides, at the time of the loan application, a gross estimate to the borrower and fails to inform that the gross estimate included a fee to record the mortgage assignment after closing. *Weatherman*, 186 Ill. 2d at 478. The appellate court answered the certified question in the affirmative on the basis that such conduct amounted to a deceptive and unfair practice. *Weatherman v. Gary Wheaton Bank of Fox Valley, N.A.*, 286 Ill. App. 3d 48, 59 (1996). In addition, the appellate court affirmed the trial court's dismissal of the escrow claim.

On appeal to the Illinois Supreme Court, the defendant argued that the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. § 2601 *et seq.* (1994)) and its accompanying regulations did not require that the estimate of settlement fees delineate each fee. Rather, the regulations permitted an estimate that is less detailed than is acceptable for the final settlement statement. The Illinois Supreme Court accepted the defendant's argument and held that the defendant had complied with RESPA when it did not delineate the specific recording charges on the estimate. *Weatherman*, 186 Ill. 2d at 486.

The court then addressed the issue of whether the defendant's compliance with RESPA constituted a defense to liability under the Consumer Fraud Act. *Weatherman*, 186 Ill. 2d at 487. The court distinguished *Weatherman* from the holding in *Martin v. Heinold Commodities, Inc.*, 163 Ill. 2d 33 (1994). In *Martin*, the defendant had represented on a commodities disclosure statement that a certain fee was a "foreign service fee" when, in fact, the fee was retained by the defendant as a commission. *Martin*, 163 Ill. 2d at 42. However, in *Weatherman*, the defendant had not misrepresented either the purpose or the recipient of the charges collected from the plaintiff. *Weatherman*, 186 Ill. 2d at 487-88. Accordingly, the court held that the defendant's compliance with RESPA constituted a defense to the Consumer Fraud Act claim. *Weatherman*, 186 Ill. 2d at 489.

We believe that the instant case more closely resembles *Martin* rather than *Weatherman*. As in *Martin*, the issue in the present case is whether the disclosure misrepresented that fees were collected for a certain purpose when, in fact, the fees represented a profit for the defendant. We conclude that *Weatherman* does not support TMCC's argument that its alleged compliance with TILA may serve as a defense to liability under the Consumer Fraud Act.

In *Beckett v. H&R Block, Inc.*, 306 Ill. App. 3d 381 (1999), the plaintiffs brought suit under the Consumer Fraud Act against H&R Block and others for inadequate disclosures concerning the defendant's "refund anticipation loans." The plaintiffs alleged that the defendant misrepresented that the finance charge was forwarded to a lending institution, when H&R Block ultimately received part of the money. The disclosure failed to clarify that the lending institution would pay part of the finance charge back to H&R Block. *Beckett*, 306 Ill. App. 3d at 383.

The *Beckett* court rejected the plaintiffs' argument that H&R Block had engaged in an affirmative misrepresentation, distinguishing the case from the facts in *Bernhauser*. *Beckett*, 306 Ill. App. 3d at 389. In *Bernhauser*, the *Beckett* court reasoned, the plaintiff had alleged that part of the money collected had been retained by the dealership before the rest was forwarded to the third party for the service contract. In *Beckett*, however, the allegations concerned solely a "kickback" scenario where H&R Block would pay the finance charge to the lending institution, which would then, in turn, kick back part of the finance charge to H&R Block. The *Beckett* court held that *Lanier* barred the plaintiffs' Consumer Fraud Act claims predicated upon the "kickback" scenario. *Beckett*, 306 Ill. App. 3d at 390. The *Beckett* court refused to extend the requirements of TILA to compel disclosure of the kickbacks, as extending the disclosure requirements beyond those mandated by TILA "is reposed with the legislature, not the courts." *Beckett*, 306 Ill. App. 3d at 390.

The holding in *Beckett* is inapposite to the present case. As in *Bernhauser*, the plaintiff here has alleged that some of the money, which was represented to have been paid to a third party, was never paid to a third party but, rather, was retained by Arlington. We do not believe that TMCC can escape liability under the Consumer Fraud Act based upon the holding in *Beckett*.

■ TMCC next argues that the dismissal of the Consumer Fraud Act cause of action should be affirmed because TMCC cannot be held "secondarily liable" under the Consumer Fraud Act for any fraud committed by Arlington, citing the holding in *Zekman v. Direct American Marketers, Inc.*, 182 Ill. 2d 359 (1998). We believe that *Zekman* is distinguishable from the case at hand. In *Zekman*, the plaintiff brought suit against his long distance carrier, AT&T, for charges billed to him when he dialed "900 numbers" in the hopes of winning certain prizes. *Zekman*, 182 Ill. 2d at 363-64. The plaintiff alleged that AT&T collected the charges on behalf of Direct American Marketers, Inc. (Direct American), and retained a portion. *Zekman*, 182 Ill. 2d at 364. The plaintiff brought two causes of action under the Consumer Fraud Act

against AT&T. The plaintiff's first Consumer Fraud Act cause of action was premised upon the allegations that AT&T knowingly received the benefits of fraud committed by Direct American. The trial court dismissed this count. The plaintiff filed a second count under the Consumer Fraud Act against AT&T. This count alleged that AT&T had directly violated the Consumer Fraud Act in reviewing, revising, and approving Direct American's solicitations. The trial court granted summary judgment against the plaintiff with regard to this second Consumer Fraud Act count. *Zekman*, 182 Ill. 2d at 373.

The plaintiff appealed both the dismissal of the first count as well as the summary judgment order. The Illinois Supreme Court rejected the plaintiff's argument that AT&T could be held liable for knowingly receiving the benefits of another's fraud and held that such conduct was not actionable under the Consumer Fraud Act. *Zekman*, 182 Ill. 2d at 371-72. With regard to the count predicated upon an alleged direct violation of the Consumer Fraud Act, the court affirmed the trial court's granting of summary judgment against the plaintiff due to the plaintiff's failure to support his allegations that AT&T's conduct caused him to sustain damages.

TMCC's reliance on *Zekman* is misplaced. In *Zekman*, the only portion of the plaintiff's complaint that failed to sufficiently allege a cause of action concerned allegations that AT&T had knowingly received the benefits of another's fraud. The court held that a cause of action under the Consumer Fraud Act would not lie for so-called secondary liability. *Zekman*, 182 Ill. 2d at 370. In this case, however, the plaintiff has alleged that TMCC directly participated in the fraud with Arlington by printing and distributing forms and by conspiring with Arlington to mislead consumers. It is clear that the plaintiff in the present case has endeavored to allege a direct cause of action under the Consumer Fraud Act against TMCC and that the holding in *Zekman* does not support TMCC's argument that the dismissal should stand.

In light of our rulings that TMCC's shelter from liability under TILA does not operate as a bar to the plaintiff's Consumer Fraud Act claim and that *Zekman* is inapplicable, we need not address the plaintiff's argument that the preservation of claims provision may serve as a basis to state a cause of action under the Consumer Fraud Act against TMCC.

■ We now turn to the issue of whether the plaintiff has adequately pled a violation of the Consumer Fraud Act. To state a claim under the Consumer Fraud Act, the plaintiff must set forth specific facts that show (1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; (3) the

deception occurred in the course of conduct involving trade or commerce; and (4) the fraud proximately caused injury to the plaintiff. *Perona v. Volkswagen of America, Inc.*, 292 Ill. App. 3d 59, 65 (1997). A plaintiff must at least plead with sufficient particularity and specificity facts establishing the elements of fraud, including what misrepresentations were made, when they were made, who made the misrepresentations, and to whom they were made. *Perona*, 292 Ill. App. 3d at 65.

■ An omission or concealment of a material fact in the conduct of trade or commerce constitutes consumer fraud. *Perona*, 292 Ill. App. at 67. A material fact exists when a buyer would have acted differently knowing the information or if it concerned the type of information on which a buyer would be expected to rely in making a decision whether to purchase the product. *Perona*, 292 Ill. App. at 67-68.

■ ■ In this case, we note that count V, which purports to state a cause of action under the Consumer Fraud Act, contains only one allegation concerning the alleged fraud committed by TMCC, to wit: "[a]t no time has TMCC informed plaintiff or any other class member of the true and correct amount that was paid to the MBP Insurance company." This single statement, standing alone, is grossly insufficient to state a cause of action under the Consumer Fraud Act.

The plaintiff does not allege that the upcharge constituted a material fact on which the plaintiff would be expected to rely in making a decision to purchase the warranty. Moreover, the plaintiff does not set forth any facts from which we may infer that TMCC intended that the plaintiff rely on the deception. In addition, the plaintiff has alleged insufficient facts concerning the nature of the alleged concealment. In short, we determine that count V of the complaint is insufficient to state a cause of action under the Consumer Fraud Act. In light of our foregoing analysis concerning the viability of a cause of action against TMCC under the Consumer Fraud Act, and because we cannot say that there is no set of facts under which the plaintiff could state a cause of action under the Consumer Fraud Act, we reverse that portion of the trial court's order dismissing count V with prejudice, and we remand to the trial court to allow the plaintiff to replead count V. See *Jackson v. Michael Reese Hospital & Medical Center*, 294 Ill. App. 3d 1, 18 (1997).

### B. Fraudulent Misrepresentation/Civil Conspiracy

■ We now turn to the trial court's dismissal of count IV alleging fraudulent misrepresentation. The elements of a cause of action for common law fraud are (1) a false statement of material fact; (2) known or believed to be false by the party making it; (3) an intent to induce the other party to act; (4) action by the other party in reliance on the

truth of the statement; and (5) damage to the other party as a result of the reliance. *Ciampi v. Ogden Chrysler Plymouth, Inc.*, 262 Ill. App. 3d 94, 103 (1994).

■ In count IV, the plaintiff alleges that TMCC was the assignee of the retail installment contract that contained the misleading information concerning the amount paid to the warranty company. The plaintiff alleges that TMCC "participated in a scheme and therefore conspired with dealerships to *** exact monies in amounts in excess of" the actual cost of the warranties. The plaintiff further alleges that TMCC was aware of the misleading disclosures and that TMCC produced and distributed the retail installment contracts "that enable Arlington *** to make the misrepresentations" to the plaintiff.

The allegations in count IV are insufficient to set forth a cause of action for fraudulent misrepresentation. The plaintiff has not alleged any facts from which it could be inferred that TMCC made a false statement of material fact. The plaintiff has also failed to allege that TMCC intended to induce the plaintiff to enter into the retail installment contract and that the plaintiff actually relied upon a false statement by TMCC. In the absence of such allegations, count IV is insufficient to allege a cause of action for fraudulent misrepresentation.

■ The plaintiff alternatively argues that count IV contains facts sufficient to set forth a cause of action for civil conspiracy. The requisite elements for a civil conspiracy claim are (1) an agreement between two or more persons to participate in an unlawful act or a lawful act in an unlawful manner; (2) an injury caused by the defendant; and (3) an overt act committed in furtherance of the common scheme. *Adcock v. Brakegate, Ltd.*, 247 Ill. App. 3d 824, 833 (1993).

In *Bernhauser*, we considered whether the plaintiff had alleged sufficiently a cause of action for conspiracy against Chrysler. *Bernhauser*, 288 Ill. App. 3d at 996. The plaintiff had alleged that Chrysler authorized and encouraged the dealership to sell Chrysler service contracts at a price determined by the dealership and provided the dealership with preprinted applications. *Bernhauser*, 288 Ill. App. 3d at 996. The plaintiff also alleged that Chrysler conspired with the dealership to represent that the charges for the service contract would be collected by and passed through the dealership to Chrysler and that Chrysler authorized the dealership to retain a portion of the charge collected for the service contract. Chrysler argued that the plaintiff had failed to plead conspiracy with specificity. We held that the facts set forth by the plaintiff were sufficient to plead a cause of action for conspiracy, and we reversed the trial court's dismissal of the cause of action against Chrysler. *Bernhauser*, 288 Ill. App. 3d at 996.

■ In comparing the allegations of count IV with those set forth

in *Bernhauser*, it is apparent that count IV is woefully lacking in detail to assert a cause of action for civil conspiracy. There is no allegation that TMCC and Arlington entered into an agreement to misrepresent the recipient of the fees collected from the plaintiff, and there are no specific facts in count IV concerning any alleged common scheme between the defendants. Moreover, count IV is devoid of any allegations that TMCC committed acts in furtherance of a common scheme. For all these reasons, count IV does not state a cause of action for civil conspiracy. However, because we cannot say that there is no set of facts under which the plaintiff could state a cause of action for either civil conspiracy or fraudulent misrepresentation, we reverse that portion of the trial court's order dismissing count IV with prejudice, and we remand the cause to the trial court to allow the plaintiff an additional opportunity to plead fraudulent misrepresentation and/or civil conspiracy. See *Jackson*, 294 Ill. App. 3d at 18.

### C. Restitution

The plaintiff's last cause of action, count VI, is for "restitution." TMCC argues that restitution is not an independent cause of action but, rather, is an equitable remedy in an action for unjust enrichment. The plaintiff argues that the supreme court has recognized a claim of restitution as an independent cause of action, citing *Board of Education v. A, C & S, Inc.*, 131 Ill. 2d 428 (1989).

■ Restitution is an equitable remedy and the basis of liability is unjust enrichment. *Independent Voters v. Illinois Commerce Comm'n*, 117 Ill. 2d 90, 98 (1987). Restitution is compelled where an adequate legal remedy does not exist for the aggrieved party. *Independent Voters*, 117 Ill. 2d at 98. We do not believe that *Board of Education* stands for the proposition that restitution is an independent cause of action, and we are persuaded that restitution is merely an equitable remedy. Therefore, we affirm that portion of the trial court's order dismissing, with prejudice, count VI of the plaintiff's complaint.

### D. Remaining Issues

Having resolved the issues regarding the dismissal of the plaintiff's complaint, we note that TMCC raises in its appellee brief an issue concerning the plaintiff's class claims. Although TMCC has not filed a cross-appeal, TMCC requests that we dismiss the plaintiff's class claims. TMCC argues that fraud-based claims are not appropriate for class treatment. The plaintiff responds that the propriety of the class certification is not properly before this court. We agree.

■ The trial court entered an order certifying the cause to proceed as a class action on January 3, 1995. TMCC cites no authority that would suggest that it has preserved this issue for our review, and,

thus, the issue of the class certification is deemed waived. *Brown v. Tenney*, 125 Ill. 2d 348, 362 (1988).

■ We note that there is one final issue we must address. In her reply brief, the plaintiff argues that we should reverse the trial court's order striking the appendix to her complaint, which consisted of a report from the New York Attorney General. The plaintiff did not raise this issue in her appellant brief and, thus, may not raise it in her reply brief. 177 Ill. 2d R. 341(e)(7). Therefore, the issue is waived, and we will not consider it.

### III. Conclusion

For the foregoing reasons, we hold as follows:

(1) that portion of the trial court's November 23, 1998, order dismissing count IV, with prejudice, is reversed;

(2) that portion of the trial court's order dismissing count V, with prejudice, is reversed;

(3) that portion of the trial court's order dismissing count VI, with prejudice, is affirmed; and

(4) this cause is remanded for the plaintiff to replead counts IV and V and for further proceedings consistent with this opinion.

Affirmed in part and reversed in part; cause remanded.

BOWMAN, P.J., and INGLIS, J., concur.