761 A.2d 1115

Sandra J. BASILE and Laura Clavin, Individually and on behalf of others similarly situated, Appellees

v.

H & R BLOCK, INC., H & R Block Eastern Tax Services, Inc. and Mellon Bank (DE) National Association, Appellants.

Appeal of H & R Block, Inc. and H & R Block Eastern Tax Services, Inc.

Sandra J. Basile and Laura Clavin, Individually and on behalf of others similarly situated

v.

H & R Block, Inc., H & R Block Eastern Tax Services, Inc. and Mellon Bank (DE).

Appeal of H & R Block, Inc., H & R Block Eastern Tax Services, Inc.

Sandra J. Basile and Laura Clavin, Individually and on behalf of others similarly situated

v.

H & R Block, Inc., H & R Block Eastern Tax Services, Inc. and Mellon Bank (DE) National Association.

Appeal of H & R Block, Inc., and H & R Block Eastern Tax Services, Inc. (Two Cases).

Supreme Court of Pennsylvania.

Argued Feb. 1, 2000.

Decided Nov. 22, 2000.

James C. Schwartzman, Philadelphia, N. Louise Ellingsworth, Kansas City, MO, for appellants, H & R Block and H & R Block Eastern Tax Services.

Steven E. Angstreich, Michael Coren, Carolyn C. Lindheim, Philadelphia, for appellees, Sandra J. Basile and Laura Clavin.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION OF THE COURT

CASTILLE, Justice.

This Court granted allocatur to address questions concerning the scope and contours of agency relationships under Pennsylvania law. Specifically, we must determine whether appellees produced sufficient evidence of an agency relationship between appellants H & R Block, Inc., H & R Block Eastern Tax Services, Inc. (collectively "Block") and appellants' Rapid Refund customers so that appellees' class action complaint that Block breached a fiduciary duty to those customers may survive summary judgment.

H & R Block, Inc., provides tax preparation services nationwide through a network of retail offices operated through subsidiaries, one of which is H & R Block Eastern Tax Services. As part of its service, Block offers a program known as "Rapid Refund," which involves electronic filing of tax returns with the Internal Revenue Service (IRS), resulting in quicker refunds than a taxpayer filing a paper return would receive. Block also arranged for Mellon Bank (DE) National Association (Mellon Bank) to provide a refund anticipation loan (RAL) program to Block's qualified Rapid Refund customers. Under the RAL program, Mellon Bank advanced to the customer the amount of the customer's anticipated tax refund, less a financing charge, within days of Block's filing of the return. Appellee Sandra Basile applied for, and received, such a loan in 1993.

Basile and Laura Clavin filed this class action against Block and Mellon Bank in the Court of Common Pleas of Philadelphia County alleging that Mellon Bank, acting as a consumer

lender providing RALs, participated with Block in practices designed to deceive consumers as to the true nature of the loans.[1] Block and Mellon Bank removed the case to the United States District Court for the Eastern District of Pennsylvania based upon diversity jurisdiction.[2] Appellees then filed an amended class action complaint asserting claims under the Truth in Lending Act,[3] the Pennsylvania Unfair Trade Practices and Consumer Protection Law[4] and the Delaware Legal Rate of Interest,[5] as well as a claim that Block breached its fiduciary duty to appellees by failing to disclose that the RAL was a loan and that Block had a financial interest in arranging the RAL program.

Discovery was conducted in the federal court action, after which Block and Mellon Bank filed motions for summary judgment. The district court granted the motions in part and dismissed appellees' federal claims under the Truth in Lending Act and the Delaware Legal Rate of Interest. The court also found that appellees' unfair trade practices claim was preempted by the National Bank Act.[6] Having dismissed the federal claims, and finding no diversity jurisdiction, the district court returned the matter to the Court of Common Pleas.

Appellees then filed a class certification motion in common pleas court, and the parties filed cross motions for summary judgment on the breach of fiduciary duty claim. The initial trial judge denied the motions for summary judgment without prejudice pending a ruling on class certification. The matter was reassigned to the Honorable John W. Herron, who conducted a class certification hearing. Judge Herron held that

---

**1.** The trial court ultimately found that Laura Clavin was not an adequate class representative, and the Superior Court affirmed that ruling. Therefore, notwithstanding the caption, Sandra Basile is the sole named appellee. Although also listed as a nominal appellant, Mellon Bank is not a party to this appeal.

**2.** 28 U.S.C. § 1441.

**3.** 15 U.S.C. § 1638.

**4.** 73 P.S. § 201–2 *et seq.*

**5.** 6 Del.Code § 2301(a).

**6.** 12 U.S.C. § 1 *et seq.*

the unfair trade practices claim was preempted and denied certification as to appellees' claims for fraud and negligent misrepresentation. The court granted certification on the breach of fiduciary duty claim and disqualified Laura Clavin as a class representative due to a conflict of interest.

The parties then filed renewed cross motions for summary judgment on the fiduciary duty claim. The trial judge, the Honorable Stephen E. Levin, granted Block's motion for summary judgment finding that Block was not appellees' agent because appellees did not exercise substantial control over Block's preparation of the tax returns and, further, that no confidential relationship otherwise existed between the parties. Appellees appealed Judge Levin's order granting summary judgment on the breach of fiduciary duty claim, as well as Judge Herron's order finding that the unfair trade practices claim was preempted and disqualifying Clavin as a class representative.[7] The Superior Court reversed Judge Levin's grant of summary judgment, as well as Judge Herron's order denying class certification based on preemption of the unfair trade practices claim as to Block. The court affirmed the denial of class certification as to Mellon Bank. With respect to summary judgment, the Superior Court found "as a matter of fact" that the pleadings established a principal-agent relationship between Block and appellees giving rise to a fiduciary duty as to all matters within the scope of the agency. *Basile v. H & R Block, Inc.*, 729 A.2d 574, 582 (Pa.Super.1999). The court remanded to the trial court for "disposition of questions of fact concerning the extent to which Block's failure to disclose the nature of the Rapid Refund program and its participation in the profits generated by the RALs constituted a violation of Block's duty as an agent." *Id.* Having found that a fiduciary duty existed as a result of an agency relationship, the court did not reach appellees' alternate theory of liability—i.e., that a fiduciary duty arose as a result of a confidential relationship between Block and appel-

7. Block cross-appealed the initial trial judge's order to the extent that it created a presumption that Block had acted as appellees' agent. The Superior Court affirmed. That issue is not before this Court.

lees. *Id.* Block sought allocatur only on the agency issue, and this Court granted allocatur to consider the propriety of the Superior Court's conclusion that an agency relationship existed between appellees and Block such that appellees may pursue a claim that Block breached its fiduciary duties to them.

This Court's scope of review of an order granting summary judgment is plenary. *O'Donoghue v. Laurel Savings Ass'n,* 556 Pa. 349, 354, 728 A.2d 914, 916 (1999). Our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or clearly abused its discretion. *Cochran v. GAF Corp.,* 542 Pa. 210, 215, 666 A.2d 245, 248 (1995). Summary judgment is appropriate only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *P.J.S. v. Pennsylvania State Ethics Comm'n,* 555 Pa. 149, 153, 723 A.2d 174, 175 (1999). The reviewing court must view the record in the light most favorable to the nonmoving party, resolving all doubts as to the existence of a genuine issue of material fact against the moving party. *Id.* When the facts are so clear that reasonable minds cannot differ, a trial court may properly enter summary judgment. *Cochran,* 542 Pa. at 215, 666 A.2d at 248.

The parties do not dispute the facts material to the issue of whether an agency relationship existed. In 1990, Block began offering its Rapid Refund program whereby its taxpayer customers could receive speedier refunds using one of three services: (1) electronic filing of the tax return for a fee; (2) electronic filing for a fee with direct deposit of the taxpayer's refund by the IRS to the taxpayer's bank account; or (3) electronic filing for a fee with a RAL arranged by Block with a lender such as Mellon Bank. The third option involving the RALs is the service at issue.

Block offered its RAL program through Mellon Bank to Block's Pennsylvania customers. Between 1990 and 1993, more than 600,000 Pennsylvania residents participated in the

RAL program. Specifically, Block customers who filed their returns electronically and met the lender's eligibility requirements were informed of the availability of loans in the amount of their anticipated refunds from Mellon Bank. If the customer was interested in the loan, Block would simultaneously transmit the taxpayer's income tax return information to the IRS and Mellon Bank. Within a few days of the transmittal, the taxpayer, if approved, would receive a check in the amount of the loan minus a bank transaction fee. The taxpayer could also elect to have Block's tax preparation and electronic filing fees withheld by the lender from the RAL check so that the taxpayer would not have to advance any money. When the taxpayer's actual tax refund was ready, usually within a matter of weeks, the IRS would deposit the refund check into an account with Mellon Bank to repay the loan. In exchange for the RAL, the taxpayer paid to Mellon Bank a flat rate finance charge of $29.00 or $35.00, which Block employees presented to the taxpayer as a flat dollar amount rather than as a percentage interest rate on the short term loan.[8] Since the RAL is secured by the tax refund, and the tax refund is paid directly into a proprietary account at Mellon Bank, the lender bank takes on few risks with the program. Block did not disclose to its RAL customers that it received a payment from Mellon Bank for each loan, shared in the profits of the RALs in other ways, or that the taxpayer's endorsement on the back of the loan proceeds check constituted a signature on a loan agreement printed on the reverse of the check.

The positions of the parties are easily stated. Appellees claim, and the Superior Court found, that they produced sufficient evidence to establish that an agency relationship existed between Block and the taxpayers who participated in the Rapid Refund program and secured RALs. They further claim that Block breached its fiduciary duty to those taxpayers by failing to disclose the true nature of the program as a loan program and to inform them that Block received a percentage

8. Due to the short-term nature of these loans (approximately two weeks), the finance charges translate to interest rates as high as 151 percent, depending on the amount of the loan. Appellee Basile's actual interest rate was 77.3 percent.

of the finance charge paid to Mellon Bank and indirectly benefited from the loans in other ways. Appellees note that Block holds itself out to the public as "America's tax team" and encourages consumer trust by utilizing slogans such as "Do what millions of Americans do, trust H & R Block" and that Block's success in the field of tax return preparation is due to the image of trustworthiness Block has created. Appellees claim that Block exploited this relationship with their clients by steering them into loans with exorbitant rates of interest carrying little practical value other than a quick refund for their clients, but which further profited Block financially.

Block denies that it had an agency relationship with its customers, arguing that appellees did not exercise the requisite substantial control over Block's preparation and electronic filing of the tax returns and that Block did not have the legal authority to bind appellees to the RAL agreements. Accordingly, Block argues that it owed no fiduciary duty to its clients with respect to the RALs. Instead, referring to then-Chief Judge Cardozo's well-known formulation maxim, Block avers that it was free to conduct itself with its clients according to the "morals of the marketplace." Brief for Appellants at 28–29, quoting *Northeast General Corp. v. Wellington Advertising, Inc.*, 82 N.Y.2d 158, 604 N.Y.S.2d 1, 624 N.E.2d 129, 132–33 (1993), quoting *Meinhard v. Salmon*, 249 N.Y. 458, 464, 164 N.E. 545, 547, (1938) (Cardozo, C.J.).

 The law is clear in Pennsylvania that the three basic elements of agency are: " 'the manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking and the understanding of the parties that the principal is to be in control of the undertaking.' " *Scott v. Purcell*, 490 Pa. 109, 117, 415 A.2d 56, 60 (1980), quoting Restatement (Second) of Agency § 1, Comment b (1958); *see also Reid v. Ruffin*, 503 Pa. 458, 463, 469 A.2d 1030, 1033 (1983). "[A]gency results only if there is an agreement for the creation of a fiduciary relationship with control by the beneficiary." *Smalich v. Westfall*, 440 Pa. 409, 413, 269 A.2d 476, 480 (1971). The burden of establishing an agency relationship

rests with the party asserting the relationship. *Scott,* 490 Pa. at 117 n. 8, 415 A.2d at 61 n. 8. "An agency relationship is a fiduciary one, and the agent is subject to a duty of loyalty to act only for the principal's benefit." *Sutliff v. Sutliff,* 515 Pa. 393, 404, 528 A.2d 1318, 1323 (1987), citing Restatement (Second) of Agency § 387 (1958). Thus, in all matters affecting the subject of the agency, the agent must act with the utmost good faith in furthering and advancing the principal's interests, including a duty to disclose to the principal all relevant information. *See Sylvester v. Beck,* 406 Pa. 607, 610–11, 178 A.2d 755, 757 (1962).

Other jurisdictions have considered the precise issue before this Court—whether, under the law of those jurisdictions, an agency relationship existed between Block and taxpayers participating in Block's Rapid Refund program who secured RALs—with mixed results. A single court, the Maryland Court of Appeals, has held that Block acted as its customers' agent with respect to the RALs. *See Green v. H & R Block, Inc.,* 355 Md. 488, 735 A.2d 1039 (1999).[9] There, the court found that Block acted as the taxpayers' agent in preparing their income tax returns, and that the agency relationship included the process of securing RALs, because the taxpayers' retained ultimate control over Block's actions in preparing and filing the tax returns and applying for the RALs.[10] The court based its finding of an agency relationship as to the RALs on the fact that Block "played an integral part in the customer's receipt of the bank loan, which indisputedly has legal ramifications for the H & R Block customer and the bank." *Id.* at 1053. In addition, the court emphasized that Block intended to create a scenario in which taxpayers would trust it to prepare and file their returns and obtain the most rapid

9. *Green v. H & R Block* is the sole appellate decision existing at the time of this opinion finding that an agency relationship exists between Block and its RAL customers. Notably, the *Green* court relied upon the Superior Court's decision in this case in support of its decision.

10. Block conceded at oral argument in *Green* that it acted as the agent for the taxpayers in preparing and filing returns, but asserted that it acted as the lender's agent rather than the taxpayers' agent in securing the RALs. Block argued that the two transactions should be treated distinctly. No such concession has been made here.

refund possible resulting in the taxpayers' reasonable belief that Block was acting as their agent. That scenario, the Maryland court felt, made it reasonable for Block's customers to believe that Block was acting as their agent.

The weight of authority, however, is to the contrary. In *Carnegie v. H & R Block, Inc.,* 269 A.D.2d 145, 703 N.Y.S.2d 27 (2000), *Beckett v. H & R Block, Inc.,* 306 Ill.App.3d 381, 239 Ill.Dec. 736, 714 N.E.2d 1033 (1999), and *Peterson v. H & R Block Tax Services, Inc.,* 971 F.Supp. 1204 (N.D.Ill.1997), the courts found that no agency relationship existed in connection with the RALs. In *Carnegie,* the court upheld the dismissal of the plaintiff's cause of action for breach of fiduciary duty holding that "Block was not acting as plaintiff's agent in soliciting her to enter into the RAL transaction, which plaintiff did by her own acts as principal." *Carnegie,* 703 N.Y.S.2d at 29 (citing *Beckett*). The *Beckett* court similarly held that "whether to enter into the RAL agreement was a decision the customer made by signing the loan check. Block did not have the power to enter into this agreement on the customer's behalf. Thus, Block was not the client's agent." *Beckett,* 239 Ill.Dec. 736, 714 N.E.2d at 1041. The federal district court in *Peterson,* meanwhile, granted Block's motion to dismiss the plaintiff's claim that Block was the plaintiff's agent on different grounds, *i.e.,* finding that the plaintiff's complaint was "devoid of facts demonstrating that [the plaintiff] controlled the 'manner or method' in which Block performed its services." *Peterson,* 971 F.Supp. at 1213.

We agree with the prevailing view. The pleadings here do not establish an agency relationship. With specific respect to the RALs, there is no showing that appellees intended Block to act on their behalf in securing the RALs. To the contrary, Block offered appellees the opportunity to file their tax returns electronically with the *three* options set forth above, only one of which involved RALs. Appellees were not required to apply for an RAL in order to have their returns prepared by Block or filed electronically through Block. It was appellees alone who decided to take advantage of that particular option. Block was neither authorized to, nor did it in fact, act on its

customers' behalf in this regard. If a customer elected to apply for an RAL, Block simply facilitated the loan process by presenting appellees to Mellon Bank as viable loan candidates. Block neither applied for the loan on behalf of appellees nor determined that appellees should apply; appellees undertook that procedure themselves. The RAL program was merely another distinct and separate service offered by Block to its customers. Furthermore, it was a distinct service that Block's customers were fully aware came at a higher price, just as one would expect for an advance of money. Simply introducing appellees to a lender willing to provide a loan is not sufficient to create an agency relationship. Therefore, we hold that, as a matter of law, Block was not acting as appellees' agent in the RAL transactions, such that they were subject to a heightened, fiduciary duty.

 We are aware that here, as in *Green*, Block could be said to have played an "integral part" in arranging the RALs. In our view, however, "integral" or not, Block's mere facilitation of the its customers' desire to pursue the loans, as one of the multiple services offered by Block, is not sufficient to establish an agency relationship under Pennsylvania law. The special relationship arising from an agency agreement, with its concomitant heightened duty, cannot arise from any and all actions, no matter how trivial, arguably undertaken on another's behalf. Rather, the action must be a matter of consequence or trust, such as the ability to actually **bind** the principal or alter the principal's legal relations. Indeed, implicit in the long-standing Pennsylvania requirement that the principal manifest an intention that the agent act on the principal's behalf is the notion that the agent has authority to alter the principal's relationships with third parties, such as binding the principal to a contract. Notably, the Restatement, which we have cited with approval in this area in the past, specifically recognizes as much. *See Restatement (Second) of Agency* § 12 ("An agent or apparent agent holds a power to alter the legal relations between the principal and third persons and between the principal and himself.").

The phrase "power of an agent" denotes the ability of an agent or apparent agent to affect the legal relations of the principal in matters connected with the agency or apparent agency. The exercise of this power may result in binding the principal to a third person in contract; in divesting the principal of his interests in a thing, as where the agent sells the principal's goods; in the acquisition of new interests for the principal, as where the agent buys goods for the principal; or in subjecting the principal to a tort liability, as where a servant, while acting within the scope of his employment, injures a third person.

*Id.* at Comment a. *See also id.* at § 8A, Comment a ("The power of an agent to bind his principal is the distinctive feature of the Anglo–American agency relation").

Such power decidedly did not exist here with regard to facilitating the RALs, nor even to preparing and filing the tax returns. Block had no more authority to alter the legal relationship between its customers and the IRS than it had to bind those customers to a loan agreement with Mellon Bank. Block could not file a tax return without the customer's authorization and signature, nor could Block obligate the customer to pay any amount of income tax to the IRS without authorization and consent in the form of the customer's signature on the return. Therefore, no agency relationship existed between Block and its customers. *See Peterson, supra.*[11]

Our conclusion that there is no agency relationship here carries no judgment regarding Block's business practices. If Block's method of doing business is worthy of the condemnation that appellees suggest, presumably the marketplace will react to correct it. It is not our place to imbue the relationship between Block and appellees with heightened legal qualities that the parties did not agree upon.

11. Appellees argue that Block has waived its argument that appellees failed to show that Block had the right to alter appellees' relationships with third parties and that, even if not waived, Pennsylvania law does not require that an agent possess the right to alter the principal's relationships with third parties. Block has maintained throughout this litigation that it lacked the authority to act on behalf of appellees; therefore, there is no waiver.

Before courts can infer and superimpose a duty of the finest loyalty, the contract and the relationship of the parties must be plumbed. We recognize that "[m]any forms of conduct permissible in a workaday word for those acting at arm's length, are forbidden to those bound by fiduciary ties." (*Meinhard v. Salmon*, 249 N.Y. 458, 464, 164 N.E. 545).... If the parties find themselves or place themselves in the milieu of the "workaday" mundane marketplace, and if they do not create their own relationship of higher trust, courts should not ordinarily transport them to a higher realm of relationship and fashion the stricter duty for them.

*Northeast General Corp. v. Wellington Advertising, Inc.*, 82 N.Y.2d 158, 604 N.Y.S.2d 1, 624 N.E.2d 129, 131 (1993).

Here, the parties created no higher realm of relationship. Nor is the transaction at issue here even unusual in the workaday marketplace. Many providers of goods and services also make referrals to banks or agencies that will finance the purchase at issue. In all of these transactions, the purchaser is generally well aware that there are costs attendant to the financing. Nothing prevented appellees from questioning Block employees regarding the basis for the costs of the RALs and whether Block benefited from the financing service. If Block's response did not satisfy appellees, they were free to take their business elsewhere. That is the essence of our market economy.

Our conclusion that an agency relationship did not exist, as a matter of law, does not end the matter. In the lower courts, appellees alternatively argued that, even if a principal-agent relationship did not exist, Block owed appellees a fiduciary duty as a result of a confidential relationship. The Superior Court did not reach this question because it concluded that an agency relationship existed. We cannot resolve this issue presently. Block requested, and was granted, review of the agency issue alone, and that is the only issue that was briefed and argued to this Court. Since we do not have the benefit of briefing or a lower court determination to review on the matter, the better course is to remand to the Superior Court

for consideration of the confidential relationship issue in the first instance.

Accordingly, the order of the Superior Court is vacated, and the matter is remanded to that court for proceedings not inconsistent with this opinion.

Justice NIGRO and Justice SAYLOR file dissenting opinions.

NIGRO, Justice, dissenting.

I respectfully dissent, as I believe that an agency relationship existed between H & R Block and Appellees.

"This Court has defined agency as 'the relationship which results from (1) the manifestation of consent of one person to another that (2) the other shall act on his behalf and subject to his control, and (3) consent by the other so to act.'" *Reid v. Ruffin*, 503 Pa. 458, 462–63, 469 A.2d 1030, 1033 (1983), citing *Smalich v. Westfall*, 440 Pa. 409, 413–14, 269 A.2d 476, 480 (1970) and RESTATEMENT (SECOND) OF AGENCY § 1(1) (1958). "Those rendering service but retaining control over the manner of doing it ... may be agents, agreeing only to use care and skill to accomplish a result and subject to the fiduciary duties of loyalty and obedience to the wishes of the principal." *Smalich*, 440 Pa. at 414, 269 A.2d at 481. Furthermore, Comment b of the Restatement (Second) of Agency § 1 provides in relevant part:

> To constitute the relation, there must be an agreement, but not necessarily a contract, between the parties; if the agreement results in the factual relation between them to which are attached the legal consequences of agency, an agency exists although the parties did not call it agency and did not intend the legal consequences of the relation to follow.

RESTATEMENT (SECOND) OF AGENCY § 1, cmt. b. Therefore, direct evidence of specific authority is unnecessary. Rather, the relationship can be inferred from the circumstances of the case by looking at factors such as the relation of the parties

and their conduct. *See Scott v. Purcell,* 490 Pa. 109, 117 n. 8, 415 A.2d 56, 60 n. 8 (1980) (internal citations omitted).

I believe that Appellees met their burden of establishing that an agency relationship existed. Here, the Superior Court found that Appellees "established that they visited the [H & R] Block offices in response to media promotions of the Rapid Refund Program to engage [H & R] Block to achieve two results: 1) to complete and file their tax returns, and 2) to obtain a refund of any overpayment of taxes they had made to the Internal Revenue Service ["IRS"]." *Basile v. H & R Block, Inc.,* 729 A.2d 574, 581 (Pa.Super.1999) (citing Deposition of Laura Calvin, 11/18/93, at 103–04; Deposition of Sandra Basile, 11/17/93, at 33–35). Appellees remained at the office while H & R Block employees completed the tax forms. After completion, the H & R Block employees requested that Appellees sign the tax returns before H & R Block sent the returns to the IRS and the state Department of Revenue. Calvin Deposition, *supra,* at 104–05; Basile Deposition, *supra,* at 39–40. These facts indicate that: (1) Appellees manifested that H & R Block, through its employees, compute their taxes and complete and send their tax forms, thereby "rendering service but retaining control of the manner of doing it;" (2) H & R Block, through its employees, accepted the undertaking of completing and sending Appellees' tax forms; and (3) Appellees remained in control, that is, they had to sign their own forms and the H & R Block employees completed the forms pursuant to information given to them by Appellees. *See Reid,* 503 Pa. at 462–63, 469 A.2d at 1033. For these reasons, I believe that an agency relationship existed between Appellees and H & R Block with respect to the computation of their taxes and the completion and submission of their tax returns to the taxing authority. What remains is to determine whether agency extended to the Rapid Refund portion of the transaction. I believe it does.

Evidence in this case establishes that when the H & R Block tax preparer determined that a particular taxpayer was eligible for a refund, the preparer offered the taxpayer one of three options. The taxpayer could choose between (1) an electronic filing of the tax return for a fee; (2) an electronic

filing of the tax return for a fee with an electronic direct deposit by the IRS of the tax return to the taxpayer's bank account; or 3) an electronic tax return filing for a fee with a refund anticipation loan arranged by H & R Block with a lending institution such as Mellon Bank, called a "Rapid Refund." The Rapid Refund enabled the taxpayer to receive her "refund" within a few days, instead of the typical four-to six weeks it would take for the taxing authority's refund check to arrive. Customers who chose the H & R Block Rapid Refund option were given an application which they completed and submitted to Mellon Bank. Once the bank approved the application, it issued a check to the taxpayer in an amount equal to the taxpayer's anticipated refund less transaction fees. The taxpayer would then sign over the entire amount of the check from the taxing authority which would arrive a few weeks later.

H & R Block essentially contends that its relationship with the taxpayer is concluded once the tax return is filed, and that once the tax preparer offers her the application for the Rapid Refund, the taxpayer's relationship is a creditor/debtor one with Mellon Bank. I disagree as I believe that H & R Block's role in facilitating the Rapid Refund for the taxpayer is as the taxpayer's agent as all three elements of agency exist. Here, (1) the taxpayer manifested her consent to the tax preparer that she wished to participate or take advantage of H & R Block's Rapid Refund program when it was offered; (2) the preparer facilitated the process of obtaining a Rapid Refund by offering an application; and (3) the preparer consented to act on the taxpayer's need by matching the taxpayer to a source for the early refund, here, Mellon Bank. *See Reid*, 503 Pa. at 462–63, 469 A.2d at 1033. Accordingly, I also believe an agency relationship existed between Appellees and H & R Block for purposes of the Rapid Refund Program.

"An agency relationship is a fiduciary one, and the agent is subject to a duty of loyalty to act only for the principal's benefit." *Sutliff v. Sutliff*, 515 Pa. 393, 404, 528 A.2d 1318, 1323 (1987) (citing RESTATEMENT (SECOND) OF AGENCY § 387 (1958) ("[A]n agent is subject to a duty to his principal to act solely for the benefit of the principal in all matters connected

with his agency.")). Furthermore, the Restatement (Second) of Agency § 389 states that: "Unless otherwise agreed, an agent is subject to a duty not to deal with his principal as an adverse party in a transaction connected with his agency without the principal's knowledge." RESTATEMENT (SECOND) OF AGENCY § 389 (1958). Finally, the fiduciary duty an agent owes his principal also includes a duty of disclosure, that is, the agent must disclose all relevant information pertaining to the parties' performances within the scope of the agency relationship. *Matter of Estate of Evasew,* 526 Pa. 98, 104–05, 584 A.2d 910, 912–13 (1990). In *Evasew,* we stated:

> [A] fiduciary seeking to profit by a transaction with the one who confided in him has the burden of showing that he communicated to the other, not only the fact of his interest in the transaction, but all information he had which it was important for the other to know in order to enable him to judge the value of his property.

*Evasew,* 526 Pa. at 104, 584 A.2d at 912.

As H & R Block was the agent through which the Rapid Refund was facilitated, it had a duty to disclose the nature of its relationship with Mellon Bank in respect to the Rapid Refund Program. As the majority noted, "Block did not disclose to its [refund application loan] customers that it received a payment from Mellon Bank for each loan, shared in the profits of the [refund application loans] in other ways, or that the taxpayer's endorsement on the back of the loan proceeds check constituted a signature on a loan agreement printed on the reverse of the check." Maj. Op. 563 Pa. at 366, 761 A.2d at 1119. I believe that this is a gross violation of H & R Block's fiduciary duty to Appellees. Since I believe that the evidence creates the inference that an agency relationship existed between H & R Block and Appellees for the entire tax return "package" offered and further, that H & R Block violated the fiduciary duty it owed to Appellees, I respectfully dissent.

SAYLOR, Justice, dissenting.

I agree with the majority that, to the extent that refund anticipated loans ("RALs") are viewed as discrete transac-

tions, no agency relationship between Block and its customers would be discernible. Like the majority, I would not be inclined to conclude, extrinsic of an existing, underlying agency relationship, that a separate agency role is necessarily undertaken by one who merely facilitates a lending transaction. Nevertheless, I join that portion of Mr. Justice Nigro's analysis which concludes, as did the Superior Court, that an agency relationship existed between Block and Appellees for the purposes of preparing Appellees' tax returns, filing them with the IRS, and obtaining refunds. Indeed, I note that H & R Block conceded as much, at least for purposes of Maryland law, in *Green v. H & R Block, Inc.*, 355 Md. 488, 735 A.2d 1039, 1049 (1999). I also believe that the fiduciary duties associated with such relationship may be viewed as sufficiently broad to compel disclosure of aspects of self-interest in a related loan transaction. Thus, I would affirm the order of the Superior Court remanding "for disposition of questions of fact concerning the extent to which Block's failure to disclose the nature of the Rapid Refund program and its participation in the profits generated by the RALs constituted a violation of Block's duty as an agent." *Basile v. H & R Block, Inc.*, 729 A.2d 574, 582 (Pa.Super.1999).