**Joe v. Mercy Fitzgerald Hospital.**

166

*John Lorthwaite*, for plaintiff.
*Ryan Grossman*, for defendant.

NEW, *J.*, September 7, 2012—For the reasons discussed herein, this court's order dated June 12, 2012, overruling defendants Manor Care Health Services at Mercy Fitzgerald and HCR Manor Care, Inc.'s preliminary objections, should be upheld on appeal.

## PROCEDURAL AND FACTUAL HISTORY[1]

Plaintiff Loretta M. Joe, administratrix of the estate of Margaret A. McKelvey (hereinafter "plaintiff"), commenced this action on October 21, 2011 against Mercy Health System (hereinafter "MHS"); Mercy Philadelphia Hospital (hereinafter "MPH"); Mercy Fitzgerald Hospital (hereinafter "MFH"); HCR Manor Care, Inc. (hereinafter "HCR") and Manor Care Health Services at Mercy Fitzgerald (hereinafter "Manor Care") following the death of Margaret A. McKelvey (hereinafter "decedent").

On December 11, 2009, decedent was admitted to MHP for evaluation of an infected left heel with gangrene where it was determined decedent's left foot was not salvageable, and decedent was evaluated for probable below the knee amputation.[2] The post-operative pathology revealed gangrene of left foot with a deep and large ulcer of the heel, acute and chronic periositis and severe peripheral vascular disease.[3] Additionally, it was noted decedent was suffering from a sacral decupitus ulcer (hereinafter "ulcer").[4]

---

1. The procedural and factual history is drawn from the amended complaint, the preliminary objections and the responses thereto.
2. Pl's amended complaint (hereinafter "Compl."), ¶¶7, 10.
3. Id at ¶13.
4. *Id.* at ¶14.

On December 23, 2009, decedent was discharged from MHP and returned to Manor Care.[5] Upon readmission, decedent's alleged husband,[6] Leroy Pennycooke (hereinafter "Pennycooke"), executed the arbitration agreement (hereinafter the "agreement"), in the space designated "patient's legal representative in his/her representative capacity."[7] The agreement contains a mandatory arbitration clause, as follows:

> This agreement made on 12/23/09 (date) by and between the parties, patient Margaret McKelvey and/ or patient's legal representative Leroy Pennycooke (collectively referred to as "patient"), and the Center Mercy Fitzgerald is an agreement intended to require that disputes be resolved by arbitration. The patient's legal representative agrees that he is signing this agreement as a party, both in his representative and individual capacity.[8]

At such time, it is uncontested Pennycooke held no power of attorney and had not been appointed decedent's legal guardian.

On February 11, 2010, decedent underwent a debridement of the ulcer, at which time sepsis was noted likely due to the infected ulcer,[9] On March 24, 2010, a

---

5. *Id.* at ¶15. The amended complaint indicates decedent was "returned" to defendants' care. A review of decedent's admitting record at HCR Manor Care lists decedent's original admission date as June 3, 2009. See admitting Record of HCR Manor Care, p. 1.

6. Although the parties disagree on whether Pennycooke was decedent's husband at the relevant time, the resolution of this dispute, as explained in detail below, is not dispositive of the present issue.

7. See arbitration agreement, p. 1.

8. *Id.*

9. Compl., ¶¶18, 19. The amended complaint does not indicate where the February 11, 2012 debridement occurred.

subsequent sacral debridement was performed on decedent, at which time skin, muscle, fascia and bone were removed.[10] Another debridement of the sacral wound occurred on April 15, 2010.[11] Post-operative diagnosis was "stage IV, huge sacral decubitus involving the bone of the sacrum."[12] Decedent passed away on April 24, 2010, cause of death noted as "septic shock due to end stage sacral decubitus ulcer due to peripheral vascular disease."[13]

Plaintiff then initiated the instant suit. Defendants Manor Care and HCR (collectively "defendants") filed preliminary objections on March 20, 2012, to which plaintiff filed an amended complaint on April 5, 2012. Thereafter, defendants filed the instant preliminary objections on April 25, 2012, seeking, in part, to enforce an arbitration agreement executed by Pennycooke, as "patient's legal representative in his/her representative capacity," on December 23, 2009.[14] Plaintiff responded the arbitration clause was invalid because, inter alia, Pennycooke did not have legal authority to enter into an arbitration agreement that would bind decedent and her heirs as he was neither decedent's attorney-in-fact nor her personal representative.[15]

On June 12, 2012, this court overruled defendants' preliminary objections without prejudice. Defendants

10. *Id.* at ¶21.
11. *Id.* at ¶22.
12. *Id.* at ¶23.
13. *Id.*
14. MFH, MPH and MSH filed preliminary objections on April 25, 2012, which this court overruled by order dated June 20, 2012. Unlike the instant objections, MPH, MFH and MSH did not attempt to enforce an arbitration agreement or provision.
15. Pl.'s memorandum of law in opposition of dfts. Manor care and HCR's preliminary objections, p. 4.

timely filed an appeal from the June 12, 2012 order and filed their rule 1925(b) statement of errors complained of on appeal on July 20, 2012. Defendants raise six (6) issues on appeal:

(1) The trial court erred in overruling defendants' preliminary objections seeking to enforce an arbitration agreement, signed by the decedent's husband (or common law husband), Leroy Pennycooke, on behalf of Margaret McKelvey, who had authority to execute the agreement by virtue of implied and/or apparent authority;

(2) The trial court erred by not giving appropriate weight to evidence establishing that Leroy Pennycooke signed many other medical-legal forms on behalf of Margaret McKelvey, before, during, and after her admission to Manor Care Mercy Fitzgerald. The court did not take into account that plaintiff does not contest that Leroy Pennycooke had the authority to execute the other paperwork he signed, authorizing, for example, certain medical procedures, and the release of protected health care information, as two examples;

(3) The trial court did not take into account that under the circumstances at the time of Margaret McKelvey's admission to Manor Care Mercy Fitzgerald, that she had severe medical problems which interfered with her capacity to read and understand the documents presented. As such, Manor Care had a reasonable and proper basis to rely upon her husband, Mr. Pennycooke, as someone who had authority to act on her behalf, and in her best interests. In effect, Manor Care had no choice but to rely on Mr. Pennycooke's apparent, if not

actual, authority to act on his wife's behalf.

(4) The trial court failed to take into account that ADR agreements such as the instant agreement are enforceable under Pennsylvania law, including the Pennsylvania Uniform Arbitration Act (PUAA), the Federal Arbitration Act (FAA), and case law interpreting these statutes;

(5) The trial court may have erroneously relied upon the argument advanced by plaintiff's counsel that Mr. Pennycooke's failure to sign in two places on the arbitration agreement invalidates the agreement;

(6) The trial court may have erroneously relied upon *Stewart v. GGNSC-Canonsburg*, 9 A.3d 215 (Pa. Super. 2010) in refusing to enforce the arbitration agreement in this case. The agreement in *Stewart* is materially different than the agreement in this matter. The continuing validity of the *Stewart* decision is subject to change.

Preliminarily, defendants' fourth, fifth and sixth argument may be disposed of as they were not the basis of the court's decision. Defendants' remaining arguments center on Leroy Pennycooke's execution of the subject arbitration agreement. Thus, the issue raised on appeal is whether the court erred in refusing to enforce the arbitration agreement, which Pennycooke signed on the line designated "legal representative."

## LEGAL ANALYSIS

"A written agreement to subject any existing controversy to arbitration or a provision in a written agreement to submit to arbitration any controversy thereafter arising

between the parties is valid, enforceable and irrevocable save upon such grounds as exist at law or in equity relating to the validity, enforceability or revocation of any contract."[16] Although Pennsylvania courts have strongly favored arbitration as a means of dispute resolution,[17] "the existence of an arbitration provision and a liberal policy favoring arbitration does not require the rubber stamping of all disputes as subject to arbitration."[18]

Pennsylvania courts engage in a two-part analysis to determine whether a claim is subject to arbitration: first, whether a valid agreement to arbitrate exists between the parties and second, if so, whether the dispute involved is within the scope of the agreement.[19] Here, the scope of the agreement is not at issue. As to the validity of an arbitration agreement, the contract must be signed by a party with legal authority to take such action. If a third person signs on behalf of another, the arbitration agreement is valid and legally binding only if an agency relationship existed between them. Thus, Pennycooke could act on decedent's behalf and bind her to arbitration only if an agency relationship existed between them at the subject time.

The burden of establishing an agency relationship rests with the party asserting it.[20] Pennsylvania law recognizes

16. 42 Pa. C.S. §7303 (2012).

17. *Ross Dev. Co. v. Advanced Bldg.*, 803 A.2d 194, 196 (Pa. Super. 2002) (citation omitted).

18. *McNulty v. H&R Block, Inc.*, 843 A.2d 1267, 1272 (Pa. Super. 2004).

19. *Id.* (citing *Keystone Technical Group, Inc. v. Kerr Group, Inc.*, 824 A.2d 1223, 1227 (Pa. Super. 2003)); see also *Midomo Co. v. Presbyterian Hous. Dev. Co.*, 739 A.2d 180, 186 (Pa. Super. 1999) (citation omitted).

20. *Basile v. H & R Block, Inc.*, 563 Pa. 359, 367-68, 761 A.2d 1115, 1120 (2000).

four ways to create an agency relationship: (1) express authority; (2) implied authority; (3) apparent authority; and (4) agency by estoppel.[21] Instantly, defendants contend Pennycooke had the authority to execute the agreement by virtue of implied and/or apparent authority. To the contrary, plaintiff argues Pennycooke lacked legal authority to sign the agreement on decedent's behalf.

A party seeking to bind the principal under the theory of implied authority must prove the alleged acts of an agent are "necessary, proper and usual" in the exercise of the agent's express authority.[22] Express authority is that authority "directly granted by the principal to bind the principal to certain matters."[23] Instantly, it is undisputed Pennycooke was neither decedent's power of attorney nor her legal guardian at the time the agreement was signed. Further, there is no evidence of a writing expressly granting Pennycooke actual authority. Since defendants fail to establish he was vested with express authority, Pennycooke's acts cannot constitute those which are "necessary, proper and usual" in the exercise of such authority. Accordingly, defendants cannot seek to enforce the agreement under the theory of implied authority.

Next, defendants argue decedent is bound by the agreement under the theory of apparent authority. Apparent authority occurs "where a principal, by words or conduct, leads a party with whom the alleged agent deals to believe the principal has granted the agent the authority he purports

21. *Bolus v. United Penn Bank,* 363 Pa. Super. 247, 260-61, 525 A.2d 1215, 1221 (1987) (citation omitted).
22. *Id.*
23. *Id.*

to exercise."[24] In determining the apparent authority of an agent, Pennsylvania courts "must look to the actions of the principal, not the agent."[25] As the Pennsylvania Supreme Court has explained: "an agent cannot simply, by his own words, invest himself with apparent authority. Such authority emanates from the action of the principal and not the agent."[26] Therefore, a third party may rely on the apparent authority of an agent when such reliance is reasonably based on the principal's manifestations.[27]

At the threshold, it should be noted "a spouse is not empowered to act as an agent for the other because agency does not arise from the marital relationship alone."[28] As such, defendants may not compel arbitration on their belief Pennycooke executed the agreement in his capacity as decedent's husband. Accordingly, to compel the subject controversy to arbitration, defendants must offer evidence of decedent's words or conduct when the agreement was executed, which lead them to believe decedent had granted Pennycooke with the authority to bind her interests.

The instant facts are similar to those present in *Carr v. Immaculate Mary Nursing Home*.[29] There, Carr was admitted with symptoms of dementia, and his wife had executed the nursing facility admission agreement on his behalf. The defendants had filed preliminary objections to

24. *Id.*
25. *Id.* at 261, 525 A.2d at 1222.
26. *Turnway Corp. v. Soffer*, 471 Pa. 477, 458, 336 A.2d 871, 876 (1975) (quoting *Jennings v. Pittsburgh Mercantile Co.*, 414 Pa. 641, 645, 202 A.2d 51, 54 (1964)).
27. *Bolus*, 363 Pa. Super, at 262, 525 A.2d at 1222 (citing *Trident Corp. v. Reliance Insur. Co.*, 350 Pa. Super. 142, 150, 504 A.2d 285, 289 (1979)).
28. *Lapio v. Robbins*, 729 A.2d 1229, 1234 (Pa. Super. 1999).
29. *Carr*, 15 Pa. D. & C. 5th 415 (Pa. Com. Pl. Philadelphia County Aug. 11, 2010) (Moss, J.).

compel arbitration on the ground Carr's wife had apparent authority to act on his behalf. The *Carr* court disagreed, overruling the preliminary objections to compel arbitration because the defendants did not provide sufficient evidence to establish the wife had the requisite authority to bind her husband to arbitration. Specifically, the *Carr* court noted the defendants had failed to produce evidence of a writing expressly granting actual authority and no apparent authority could be found because the defendants did not offer evidence of the principal's conduct at the time the agreement was executed.

Here, defendants state decedent had severe medical problems, which interfered with her capacity to read and understand the documents presented. According to defendants, therefore, their reliance on Pennycooke as someone who had authority to act on her behalf was reasonable and proper. This argument overlooks settled authority that Pennsylvania courts must look to the actions of the principal, not the agent, in determining the apparent authority of the agent.[30] Notwithstanding the fact defendants admit they were aware decedent lacked the capacity to execute the agreement, defendants offer no further evidence decedent knew of the arbitration clause or otherwise authorized Pennycooke to sign it on her behalf. In fact, defendants fail to offer any further evidence of decedent's conduct at the execution of the agreement to support defendants' argument Pennycooke was vested with the requisite authority to act as her agent.[31]

---

30. *Bolus*, 363 Pa. Super. at 261, 525 A.2d at 1222.

31. The instant matter, therefore, is distinguishable from *Mannion v. Manor Care, Inc.*, 4 Pa. D. & C. 5th 321 (Pa. Com. Pl. Lehigh County Sept. 26, 2006) (Black, J.), and *Smalley v. JHA-Markleysburg Inc.*, 3 Pa. D. & C. 5th 471 (Pa. Com. Pl. Fayette County Nov. 15, 2007) (Solomon,

Thus, the court did consider the circumstances at the time of decedent's admission, but determined defendants failed to point to any evidence of decedent's conduct to establish decedent vested Pennycooke with the authority to bind her or her heirs by signing the agreement.

Defendants further contend the court erred in not giving appropriate weight to the evidence establishing Pennycooke signed many other medical-legal forms on decedent's behalf before, during and after her admission to Manor Care and the fact plaintiff does not contest his authority to execute other paperwork he signed. Contrary to defendants' assertion, plaintiff has contested Pennycooke's authority to consent to any procedure performed on decedent at MSH, MPH and MFH (collectively the "hospital defendants").[32] Further, the validity of any agreement in connection with the hospital defendants was not raised in their preliminary objections. Thus, no analysis was undertaken concerning the other facilities' arbitration agreements, if any existed between the parties. Moreover, there is no evidence to demonstrate defendants had notice of these documents at the time Pennycooke signed the agreement.

Without a showing of decedent's conduct and the reasonableness of their reliance thereof, defendants cannot seek to compel arbitration under the theory of apparent

J.), wherein the respective trial courts found a binding arbitration agreement existed despite the fact the nursing home resident was mentally impaired at the time of admission because the agreement was signed by an individual who held power of attorney authorizing the representative to act on the resident's behalf. Here, it is uncontested Pennycooke was neither decedent's power of attorney nor her legally appointed guardian at the subject time.

32. See Compl., ¶¶25, 49, 60; see also Pl.'s answer to preliminary objections of defendants MFH, MPH and MHS, ¶¶21-22; Pl.'s memorandum of law in opposition of MFH, MPH and MHS's preliminary objections, pp. 5-6.

176

authority. Defendants have the burden of establishing an agency relationship.[1] Since defendants failed to provide evidence sufficient that Pennycooke had authority to bind decedent to arbitration, the court properly overruled defendants' preliminary objections

## CONCLUSION

For the foregoing reasons, this court respectfully requests its decision to overrule defendants Manor Care Health Services at Mercy Fitzgerald and HCR Manor Care, Inc.'s preliminary objections seeking to enforce the arbitration agreement be affirmed.

---

1. *Basile*, 563 Pa. at 367-68, 761 A.2d at 1120.